UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THE GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,**<br><br>  Plaintiff,<br>v.<br><br>**JOHN K. BALDWIN ET AL.,**<br><br>  Defendants. | Case No.: 2:20-cv-00195-CRK<br><br>MEMORANDUM DECISION AND ORDER RE: THIRD MOTION TO AMEND COMPLAINT |

## I. INTRODUCTION

Before the Court is Plaintiff's Third Motion to Amend the Complaint. See Third Mot. to Amend Compl., May 21, 2021, Dkt. 59 ("Third Mot. to Amend Compl."); see also id. at Ex. A ¶¶ 4–5, 13 (Proposed Third Amended Complaint) ("PTA Compl."). Defendants oppose the motion, arguing that the proposed amendments are futile and prejudicial. Resp. Pl.'s Third Mot. to Amend Compl., June 9, 2021, Dkt. 69. ("Defs.' Resp."). For the following reasons, Plaintiff's motion is granted.

## II. FACTUAL & PROCEDURAL BACKGROUND

On August 6, 2019, the International Centre for Settlement of Investment Disputes ("ICSID") and the Permanent Court of Arbitration ("PCA") issued Final Awards resolving claims, arising under two bi-lateral investment treaties ("BIT"),[1]

---

[1] The first foreign award was arbitrated under the Agreement on Encouragement and Reciprocal Protection of Investments between the Lao People's Democratic Republic and the Kingdom of the Netherlands, see Second Amended Compl. ¶ 2, Mar. 19, 2021,

against the Government of the Lao People's Democratic Republic ("Plaintiff" or "Lao PDR").  See Second Amended Compl. ¶¶ 2–3, 109–10, Mar. 19, 2021, Dkt. 52 (citing Exs. A–D).  Lao Holdings N.V. ("LHNV") and Sanum Investments Ltd. ("Sanum") brought various claims alleging that Lao PDR failed to afford sufficient protection to their foreign investments, in violation of international obligations as provided for under the respective BITs.  See id. ¶ 86.  The ICSID Tribunal dismissed LHNV's claims and awarded Lao PDR $1,949,106.67 "in fees, expenses, and costs of the arbitrations."  See id. ¶¶ 117–18.  The PCA Tribunal similarly dismissed Sanum's claims against Lao PDR,[2] awarding Lao PDR $1,778,252.21 "in fees, expenses, and costs of the arbitrations."  Id.[3]

On April 21, 2020, Plaintiff Lao PDR filed a complaint to enforce foreign arbitral awards against Defendants James K. Baldwin ("Baldwin") and, initially, Bridge Capital, LLC, a Nevada Limited Liability Company ("LLC"), as alter egos of non-party arbitral award debtors LHNV and Sanum.[4]  Compl. ¶¶ 6–7, 148–65, Apr.

---

Dkt. 52 (citing Ex. A), and the second was arbitrated under the Agreement Concerning the Encouragement and Reciprocal Protection of Investments between the Government of the People's Republic of China and the Government of the Lao People's Democratic Republic.  Id. ¶ 3 (citing Ex. B).

[2] As of November 6, 2019, both LHNV and Sanum have filed actions in the High Court of Singapore seeking to set aside these awards.  See id. ¶ 120.

[3] According to the complaints, the total sum of both awards is $3,727,35.98, and Plaintiff requests the Court enter a judgment that Defendants are jointly and severally liable for that amount.  See, e.g., PTA Compl. ¶ 120, Prayer for Relief at (c).  The Court would only note at this point that the sum of $1,778,252.21 and $1,949,106.67 is $3,727,358.88.

[4] Plaintiff seeks enforcement pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 5, 1958, 21 U.S.T. 2517, T. I. A. S. No. 6997, as implemented within Title 9, Chapter 2 of the U.S. Code.  9 U.S.C. §§ 201, et seq. (the "Federal Arbitration Act").

**MEMORANDUM DECISION AND ORDER - 2**

21, 2020, Dkt. 1.[5] On July 16, 2020, Defendant Bridge Capital, LLC moved to dismiss the complaint for lack of jurisdiction. See Def. Bridge Capital, LLC's Mot. to Dismiss, July 16, 2020, Dkt. 21.[6] On August 31, 2020, Plaintiff moved to amend its complaint to add Bridge Capital, LLC, a Commonwealth of Northern Mariana Islands ("CNMI") LLC ("Bridge CNMI"). See Mot. to Amend Compl., Aug. 31, 2020, Dkt. 26.[7] On that same day, Plaintiff also moved for jurisdictional discovery. See Mot. to Conduct Jurisdictional Discovery, Aug. 31, 2020, Dkt. 27.[8]

On October 1, 2020, Defendant Baldwin moved to dismiss the complaint for lack of jurisdiction. See Def. John K. Baldwin's Mot. to Dismiss, Oct. 1, 2020, Dkt. 34.[9] On March 5, 2021, Plaintiff filed a second motion to amend or correct its

---

[5] Plaintiff claims that Defendant Baldwin has exercised control over LHNV and Sanum, as part of a web of corporate vehicles—involving entities located in Idaho—to perpetrate fraud against Lao PDR with respect to certain investments in Lao PDR's gambling and gaming industry, and now to avoid debts owed pursuant to the Final Awards. See, e.g., Pl.'s Resp. to Defs.' Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue at 2, 16, May 25, 2021, Dkt. 65; Second Amended Compl. ¶¶ 75–79, 227.
[6] On August 31, 2020, Plaintiff filed its response. See Pl.'s Resp. to Bridge Capital, LLC's Mot. to Dismiss for Lack of Jurisdiction, Aug. 31, 2020, Dkt. 28. On September 31, 2020, Defendant Bridge Capital, LLC filed its reply in support of its motion to dismiss. See Reply Supp. Defendant Bridge Capital, LLC's Mot. to Dismiss, Sept. 21, 2020, Dkt. 31.
[7] On September 21, 2020, Defendant Bridge Capital, LLC, filed its response to the first motion to amend. See Resp. Pl.'s Mot. to Amend Compl., Sept. 21, 2020, Dkt. 33.
[8] On September 21, 2020, Defendant Bridge Capital, LLC, filed its response. See Resp. to Pl.'s Motion to Conduct Jurisdictional Discovery, Sept. 21, 2020, Dkt. 32.
[9] On October 22, 2020, Plaintiff filed a brief constituting its response to Baldwin's motion to dismiss, reply in support of its motion to amend the complaint, and reply in support of its motion to conduct jurisdictional discovery. See Pl.'s Resp. to John K. Baldwin's Mot. to Dismiss & Replies Supp. Mots. to Amend, Conduct Jurisdictional Discovery, Oct. 22, 2020, Dkt. 37. On December 11, 2020, Defendant Baldwin filed a reply in support of his motion to dismiss. See Reply Supp. Def. John K. Baldwin's Mot. to Dismiss, Dec. 11, 2020, Dkt. 41.

**MEMORANDUM DECISION AND ORDER - 3**

complaint, seeking to add a claim under Idaho's Uniform Voidable Transactions Act ("UVTA"), I.C. §§ 55-910, et seq., to add a new party, Coleman, LLC ("Coleman"), and to plead additional allegations supporting its basis for jurisdiction. Second Mot. to Amend Compl., Mar. 5, 2021, Dkt. 45.[10] The Second Amended Complaint no longer included Defendant Bridge Capital, LLC, the Nevada LLC. See generally Second Amended Compl. During a hearing on Defendants' motions to dismiss, see Dkt. 46, counsel for Defendants expressed willingness to consent to the filing of the Second Amended Complaint, and the parties subsequently stipulated to a new schedule governing the submission of various filings and motions, including any requests for discovery or motions for jurisdictional discovery. See Revised Stipulation Re: Scheduling Deadlines, Mar. 18, 2021, Dkt. 49. Consequently, on March 19, 2021, the Court granted Plaintiff's second motion to amend its complaint. Order, Mar. 19, 2021, Dkt. 53. On May 4, 2021, Defendants again moved to dismiss for lack of jurisdiction, and also for failure to state a claim upon which relief can be granted. Defs.' Baldwin & Bridge's Mot. to Dismiss for Lack of Jurisdiction or Improper Venue, May 4, 2021, Dkt. 56; Defs.' Mot. to Dismiss for Failure to State a Claim, May 4, 2021, Dkt. 57.[11]

Plaintiff now moves, for a third time, to amend the complaint in order to add a new party—Campbell Holdings, LLC ("Campbell LLC")—and to plead causes of

---

[10] The parties stipulated to the filing of the second amended complaint which incorporated the amendments in the amended complaint. See Stipulation Re Scheduling Deadlines, March 18, 2021, Dkt. 49; Second Amended Complaint, March 19, 2021, Dkt. 52; Order Granting Second Mot. to Amend Compl., March 19, 2021 Dkt. 53.

[11] Pl.'s Resp. to Defs.' Mot. to Dismiss for Failure to State a Claim, May 25, 2021, Dkt. 64.

**MEMORANDUM DECISION AND ORDER - 4**

action arising under Idaho's UVTA and CNMI common law of fraudulent transfers. See PTA Compl. ¶¶ 4–5, 13. Relevant here, the Proposed Third Amended Complaint alleges the following.

Campbell LLC is an Idaho LLC that is owned by Baldwin, managed by his relatives, and located—and owns real estate—in Idaho. See PTA Compl. ¶¶ 10, 209. On August 13, 2019, Campbell LLC acquired four parcels of real property, collectively referred to as the "Hayden Lake Parcels," in Kootenai County, Idaho. Id. ¶ 210. Combined, the Hayden Lake Parcels hold an estimated value of over $7 million, see id. ¶¶ 210–11,[12] and were previously owned by Lee Bay's LLC ("Lee Bay's") and Synergy Investments LLC ("Synergy"). Id. ¶¶ 213–14. Maxwell Drever ("Drever"), a real estate investor, was the owner of Lee Bay's and Synergy. Id.

In 2018, before Campbell LLC acquired the properties, Drever encountered financial difficulties. See id. ¶¶ 217, 219. In July of that same year, Bridge CNMI extended to Drever a $1,312,500 loan, followed by another $400,000 loan in September, secured by a Deed of Trust in the Hayden Lake Parcels. Id. ¶ 220.

On June 4, 2019, Bridge CNMI placed a lien on the Hayden Lake Parcels. Id. ¶ 221. On August 13, 2019, less than two months later, Lee's Bay and Synergy transferred title of the Hayden Lake Parcels to a "Campbell Holdings, LLC," formed

---

[12] Plaintiff alleges the Hayden Lake Parcels consist of four properties located at: 15441 E. Hayden Lake Rd., 15553 E. Hayden Lake Rd., 15844 E. Hayden Lake Rd., and 15559 E. Hayden Lake Rd. PTA Compl. ¶ 211.

**MEMORANDUM DECISION AND ORDER - 5**

by Defendant Baldwin in the Commonwealth of the Northern Mariana Islands ("Campbell CNMI"), in order to satisfy the loan owed to Bridge CNMI. Id. ¶ 223.[13]

In December 2019, Baldwin formed a new LLC—proposed Defendant Campbell LLC—in the state of Idaho, which subsequently merged with Campbell CNMI. As such, the Hayden Lake Parcels became the property of Campbell LLC. Id. ¶ 225.

One of the Hayden Lake Parcels was placed on the market in September of 2019 for $12.9 million; the price was reduced to $5.5 million.[14] Id. ¶ 228. In December of 2019, Campbell LLC sought a $5,520,000 loan from the Idaho Central Credit Union ("ICCU") executing a Deed of Trust in the Hayden Lake Parcels in favor of the ICCU. Id. ¶ 227. A website showing the property could be found at johnbaldwinproperty.com. Id. ¶ 229.

Plaintiff alleges that its claim against Campbell LLC under the UVTA stems from the company taking title on August 13, 2019, placing a lien on the Hayden Lake Parcels, and removing the loan proceeds from Lao PDR's reach. Id. ¶ 260. Plaintiff further alleges a claim under CNMI common law against Baldwin in connection with

---

[13] The Proposed Third Amended Complaint adds a claim against Baldwin and Coleman challenging the transfer of the East Tobler Road Property to under CNMI Common Law. The Second Amended Complaint challenged the same transfer to Coleman under the UVTA, Idaho Code 55-913.

[14] Although the complaint alleges that the Hayden Lake Lodge, at 15559 E. Hayden Lake Dr., was initially placed on the market for $12.9 million, and the price was then reduced to $5.5 million, PTA Complaint ¶ 228, it is unclear whether the $12.9 million figure represented the price for all the Hayden Lake properties or for just one. See PTA Compl. ¶ 211 (listing individual values for the four different properties involved).

**MEMORANDUM DECISION AND ORDER - 6**

his alleged transfer of a property at East Tobler Road, Idaho, to Coleman, as well as Baldwin and Bridge CNMI's removal of bank accounts from Idaho. Id. ¶ 269–83.

On the same day that it filed its Third Motion to Amend Complaint, Plaintiff filed its Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"), seeking an order enjoining the disposal, transfer, or encumbrance of certain property set forth in its filing. See Mot. for TRO & PI, May 21, 2021, Dkt. 58. Following a telephonic status conference on May 24, 2021, the parties agreed to postpone briefing on Plaintiff's motion for a TRO and PI pending the Court's ruling on Plaintiff's Third Motion to Amend the Complaint. See Scheduling Order, May 24, 2021, Dkt. 61; see also Third Mot. to Amend Compl. The parties also agreed that Defendants would provide Plaintiff at least 10 days' notice of any disposal, transfer or encumbrance of the property that is the subject of Plaintiff's Motion for TRO and PI. See Order, May 25, 2021, Dkt. 62. On July 6, 2021, Plaintiff relayed to the Court its receipt of 10 days' notice of Defendants' intended transfer of the subject property, and requested the Court schedule an emergency hearing on the motion to amend and a tentative hearing on the motion for a TRO and PI. See Order, July 6, 2021, Dkt. 83. The Court heard oral argument on this motion on July 9, 2021. Dkt. 88.

### III. LEGAL STANDARD

Leave to amend a pleading should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court "considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011)

(citing Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004)). For purposes of assessing whether a proposed amendment is futile, the Court examines whether the amended pleading satisfies the requirements of Rule 8 of Federal Rules of Civil Procedure by setting forth a cognizable legal theory, such that the pleading could survive a motion to dismiss pursuant to Rule 12(b)(6). See United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1179–84 (9th Cir. 2016).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual content to, if accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Iqbal") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("Twombly")). A claim to relief is facially plausible if the underlying factual content supporting the claim allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Dismissal under Rule 12(b)(6) "may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Although "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Further, determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 678 (quoting Twombly, 550 U.S. at 557). Nonetheless, "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556.

## IV. DISCUSSION

Plaintiff's allegations contain sufficient factual content to make plausible its legal theory that (1) Campbell LLC is an alter ego of Baldwin and thus plausibly a debtor for purposes of enforcing the arbitral awards and (2) Campbell LLC, as the alter ego of Baldwin, made (a) voidable fraudulent transfer(s) under Idaho's UVTA. Further, Plaintiff alleges sufficient facts that Coleman made (a) voidable fraudulent transfer(s) under CNMI common law. Finally, allowing the proposed amendments would not be prejudicial and there has been no undue delay.[15] Accordingly, the Court grants Plaintiff's third motion to amend the complaint.

### A. Whether Campbell LLC is a Plausible Debtor

A transfer by a debtor is voidable if the "debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" I.C. § 55-913(1). A debtor is anyone who is liable on a claim, I.C. § 55-910(6), and "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." I.C. § 55-910(3). Thus,

---

[15] Defendants do not allege that Plaintiff is acting in bad faith by seeking to amend the complaint.

**MEMORANDUM DECISION AND ORDER - 9**

in order to assert a cause of action against Campbell LLC under Idaho's UVTA law, Plaintiff must first plausibly allege that Campbell LLC is a debtor. I.C. §§ 55-910, 55-913.

Plaintiff alleges that Campbell LLC would be liable as an alter ego debtor under the UVTA. See, e.g., PTA Compl. ¶ 256. Under Idaho law,[16] whether to treat an LLC as an alter ego debtor would be an equitable question to be determined by the Court.[17] Cf., e.g., Simplot Livestock Co. v. Sutfin, No. 1:18-cv-0086-EJL-CWD, 2018 U.S. Dist. LEXIS 153225, at *15–20 (D. Idaho Sept. 6, 2018) ("Simplot"); In re Jaques, 615 B.R. 608, 626–31 (Bankr. D. Idaho 2020) ("In re Jaques"); Wandering Trails, LLC v. Big Bite Excavation, Inc., 156 Idaho 586, 591–92, 329 P.3d 368, 373–74 (Idaho 2014) ("Wandering Trails"). To establish that an entity is the alter ego of a defendant, there must be "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist," and it must be shown that (2) an inequitable result would follow if actions of the company are treated as such. See Vanderford Co. v. Knudson, 144 Idaho 547, 556–57, 165 P.3d 261, 270–71 (Idaho 2007); see also, e.g., Simplot, 2018 U.S. Dist. LEXIS 153225, at *15–20; In re Jaques, 615 B.R. at 626–31; Lunneborg v. My Fun Life, 63 Idaho 856, 863–64, 421 P.3d 187, 194–95 (Idaho 2018) ("Lunneborg"); Wandering Trails, 156 Idaho at 593–97, 329 P.3d at 376–79 (Idaho 2014).

---

[16] The Court applies Idaho law for purposes of examining the alter ego issue, without prejudice to Defendants' stated refusal to concede any choice of law issue that may arise. See Defs.' Resp. at 11 n. 1.

[17] At issue here is whether Campbell LLC could be determined to be an alter ego of Baldwin. To ultimately recover, Plaintiff would also need to show that Baldwin is the alter ego of the arbitral debtors Sanum and LHNV.

**MEMORANDUM DECISION AND ORDER - 10**

Among the indicia courts consider when determining whether there exists a unity of interest are the level of control a shareholder exercises over a corporation, observance of corporate formalities, whether the corporations are operated separately, whether the corporations keep separate books, and the decision-making process of the entity. See, e.g., Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc., 95 Idaho 599, 602, 514 P.2d 594, 597 (Idaho 1973). However, in Wandering Trails, the Idaho Supreme Court, in light of prior Idaho law, observed that a showing that certain members exercise full control over an LLC or failed to observe certain corporate formalities (e.g., "mak[ing] its business decisions by resolution or . . . capitaliz[ing the entity] in a manner other than capital calls"), although relevant to a corporate veil-piercing inquiry, is not dispositive when examining whether there exists a unity of interests between member and LLC. See 156 Idaho at 594–95, 329 P.3d at 367–77; but see, e.g., Lunneborg, 163 Idaho at 867–73, 421 P.3d at 198–204 (holding "that in making [an] equitable determination [as to whether to disregard the corporate form,] trial courts are free to consider [a] myriad of factors cited by the authorities catalogued herein, without resorting to a formulaic recitation of elements[.]").

With respect to determining whether an inequitable result would follow absent alter ego treatment, the Idaho Supreme Court has required "something less than an affirmative showing of fraud but something more than the mere prospect of an unsatisfied judgment." Lunneborg, 163 Idaho at 856, 421 P.3d at 201–02 (citation omitted). For example, in Lunneborg, the Idaho Supreme Court upheld a trial court's conclusion that allowing the defendants to escape personal liability by diverting

**MEMORANDUM DECISION AND ORDER - 11**

corporate assets would be to "sanction an injustice" and "create an inequitable result." Id., 163 Idaho at 870–71, 421 P.3d at 201–02.

Here, Plaintiff alleges that Baldwin disregarded the corporate form and used Campbell LLC as part of a scheme to thwart Lao PDR's efforts to enforce the arbitral awards. According to Plaintiff, with Baldwin's nephew, Bradley J. Shaw, installed as the managing member, and Dianne Shaw, Baldwin's sister, being the registered agent, Campbell LLC is in fact owned and controlled by Baldwin, and is being used by Baldwin to encumber the Hayden Lake Parcels, placing them beyond the reach of Lao PDR. PTA Compl. ¶¶ 10, 209, 225–29, 257–58, 262–68; see also Pl.'s Reply Supp. Third Mot. to Amend Compl. at 5, July 6, 2021, Dkt. 82 ("Pl.'s Reply") (pointing to the company's decision to apply for a loan and claiming that it was Baldwin's decision, not that of management).

As relevant factual support,[18] the amended complaint alleges that: (1) Campbell LLC is owned by Baldwin, PTA Compl. ¶ 208; (2) Campbell LLC is managed by Bradley J. Shaw, Baldwin's nephew, id. ¶ 209; (3) Dianne Shaw, Baldwin's sister, is Campbell LLC's registered agent, id.; (4) Campbell CNMI, which later merged with Campbell LLC, acquired Hayden Lake Parcels on August 13, 2019 from Lee's Bay and Synergy, two entities belonging to Drever, id. ¶¶ 210, 213, 224–27; (5) in 2006, Drever built a mansion on one of the Hayden Lake Parcels at 15559 E. Hayden Lake road, which is 1.5 miles from Baldwin's former home on East Syringa Road, see id.

---

[18] The Court here focuses its recitation on facts it views would be relevant to determining Campbell LLC's alter ego status and does not consider any legal conclusions or inferences proposed by Plaintiff with respect to Baldwin's status as the alter ego of the arbitral debtors Sanum and LHNV.

¶¶ 215–16; (6) the August 13, 2019 acquisition occurred one-week after the August 6, 2019 arbitral awards underlying this enforcement action were issued, id. ¶¶ 63, 110, 210; (7) the total market value of Hayden Lake Parcels is $7,073,298, id. ¶¶ 211–12; (8) Both Baldwin and Drever were present in Hayden, Idaho, on the week of August 13, 2019, id. ¶ 224; (9) in October of 2019, Lao PDR made clear it would move to enforce the arbitral award against Defendants in Idaho, id. ¶ 264; (10) in December of 2019, Baldwin caused Campbell LLC to apply for a $5,520,000 loan from the ICCU, and on December 19, 2019, executed a Deed of Trust in the ICCU's favor, id. ¶ 227; (11) the loan resulted in a lien being recorded on the property that would have priority over Lao PDR's claim, id.; (12) the sales price for 15559 E. Hayden Lake Dr. dropped from $12.9 million in September of 2019, id. ¶ 228, to $5.5 million in May of 2021, id.; (13) and that the 15559 E. Hayden Lake Dr. was being showcased on johnbaldwinproperty.com, "and states that it is copyrighted 'John Kevin Baldwin Properties[.]'" Id. ¶ 229.

At this stage in the proceeding, the Court cannot say that it would be futile to allow Plaintiff to amend its complaint based on an absence of sufficient factual content to support its theory that Campbell LLC is an alter ego of Baldwin. The Third Amended Complaint pleads a claim for relief that is plausible based on the alleged facts that Baldwin exercised a degree of influence over Campbell LLC that rises above mere failure to observe corporate formalities, see, e.g., Wandering Trails, 156 Idaho at 594–95, 329 P.3d at 367–77, and approaches use of an LLC to escape liability or perpetrate fraud. Cf, e.g., In re Shaefers, 623 B.R. 777, 784–85 (B.A.P. 9th Cir. 2020). Namely, since Baldwin, as of October of 2019, was on notice that Lao PDR would seek

to enforce the arbitral awards in Idaho, the Court cannot say that there is only a mere possibility that Baldwin caused Campbell LLC to take out the loan in order to encumber the property and transfer the proceeds out of reach of Lao PDR. Although Defendants offer what might otherwise be innocent or commercially reasonable explanations as to why, for example, Campbell LLC was created and caused to apply for the ICCU loan, or why the sale of the subject property appeared to be marketed under Baldwin's name, see Defs.' Resp. at 11–19, the Court cannot conclude at this juncture that it would be futile to allow Plaintiff to develop its claim that Campbell LLC is an alter ego debtor under the UVTA.

**B. A Voidable Transfer**

Even if Campbell LLC is Baldwin's alter ego, in order to state a plausible claim for relief the complaint must also allege sufficient facts from which the court could reasonably infer that Campbell LLC made a voidable transfer under the UVTA. The statute provides a number of factors to consider in order to determine whether a transfer was made to defraud creditors, including:

> (a) The transfer or obligation was to an insider;
>
> (b) The debtor retained possession or control of the property transferred after the transfer;
>
> (c) The transfer or obligation was disclosed or concealed;
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e) The transfer was of substantially all the debtor's assets;
>
> (f) The debtor absconded;
>
> (g) The debtor removed or concealed assets;

> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

I.C. § 55-910.

For similar reasons, Plaintiff's amended pleadings plausibly allege that Campbell LLC made a voidable transfer under the UVTA. Pointing to several "badges of fraud," Plaintiff's theory is that Campbell LLC, under Baldwin's direction, sought a loan from the ICCU and granted to the same a security interest on the property that would have priority over any interest in the property asserted by alleged-creditor Lao PDR, before sending the proceeds from that loan out of the jurisdiction. According to Plaintiff, these transactions were orchestrated with the intent to defraud Lao PDR. Pl.'s Reply at 7–8; PTA Compl. ¶ 227. For purposes of assessing whether allowing the amendment would be futile, the Proposed Third Amended Complaint alleges enough facts in support of these badges of fraud to raise a plausible claim of relief.

First, Plaintiff points to the timing of the loan and corresponding grant of a security interest on the property. The transfer to Campbell LLC occurred just one week after the issuance of the Final Awards. PTA Compl. ¶ 210. Campbell LLC's loan from the ICCU and corresponding security interest granted to the ICCU also occurred shortly after the issuance of the Final Awards. PTA Compl. ¶ 227. On

**MEMORANDUM DECISION AND ORDER - 15**

October 2019, Lao made clear that it would sue to enforce the Final Awards. PTA Compl. ¶ 264. Nonetheless, as a result of the loan transaction, the ICCU recorded a lien on the property in December of 2019. PTA Compl. ¶¶ 63, 110–12, 120, 210. Second, the amended complaint alleges that the transfer was to an insider, see I.C. § 55-910(a), because the money from the proceeds of the loan was paid in part to Bridge CNMI, another Baldwin-owned entity. See, e.g., PTA Compl. ¶ 260.

Moreover, noting that statutory factors are not exhaustive, Plaintiff points to other facts which it claims are badges of fraud. Most notably, Plaintiff suggests that Defendants used Campbell LLC as the transferee to avoid using a known alter ego, and thus conceal the transfer. See Pl.'s Reply at 6; PTA Compl. ¶ 262. Plaintiff also points to the transfer of the East Tobler Road property from Baldwin to Coleman to suggest that the Campbell LLC transfer is part of a larger scheme to transfer assets.[19] See, e.g., PTA Compl. ¶¶ 64, 273–77. Although Defendants argue that transfers involving Campbell LLC were public information, see Defs.' Resp. at 13–14, 20, at this stage in the proceeding, the Court cannot say it is not plausible that the Plaintiff will be successful.

Defendants advance possible alternative explanations for these actions, see, e.g., Defs.' Resp. at 15, but none foreclose Plaintiff's theory that Campbell LLC took steps to encumber and transfer assets out of Lao PDR's reach. By denying the

---

[19] Throughout its papers Plaintiff sometimes refers to Coleman as an "offshore company." See, e.g., Pl.'s Reply at 6. Coleman however is a CNMI company and the CNMI is a United States Commonwealth. See 48 U.S.C. § 1801. To the extent that Plaintiff is suggesting that funds have been moved out of the United States by being transferred to a company in the CNMI, that suggestion is incorrect.

**MEMORANDUM DECISION AND ORDER - 16**

proposed amendment at this stage based on what Defendants would have the Court accept as coincidence, the Court would deny Plaintiff the opportunity to test claims that are otherwise supported by enough factual content to plausibly support a claim that Campbell LLC is liable under Idaho's UVTA. Notwithstanding declarations of Baldwin and Bradley J. Shaw cited to by Defendants in their response, see, e.g., Defs.' Resp. at 5, it remains unclear whether Campbell LLC transferred the loan proceeds out of Idaho, and issues such as Baldwin's purported motives for closing the Idaho bank accounts or establishing Campbell LLC remain untested. Thus, allowing Plaintiff to amend the complaint with respect to this point would not be futile.

   **C. CNMI Fraudulent Transfer**

The parties in their submissions discuss Sullivan v. Tarope, a CNMI decision that states: "[t]he Commonwealth has no statutory law regarding a transfer of real property in fraud of creditors." See Civ. No. 98-1293D at 8 (N.M.I. Super. Ct. Mar. 19, 2003), Dkt. 64-1 ("Sullivan"). Sullivan instructs that:

> In the absence of written law or local customary law to the contrary, the Court turns to the rules of the common law, as expressed in the restatements of the law as approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States

Id. The parties do not contend that the rules of common law with respect to determining whether there has been a fraudulent transfer would differ in any material way to those reflected in the UVTA.

For reasons similar to those set forth above, Plaintiff alleges enough facts to make plausible its claim of (a) fraudulent transfer(s) under CNMI common law. Namely, Plaintiff alleges that fourteen days after the Final Awards were issued,

Baldwin transferred property to Coleman, a CNMI company, see PTA Compl. ¶¶ 230–33, and that Baldwin and Bridge CNMI closed their Idaho bank accounts and transferred funds from those accounts outside of Idaho shortly thereafter. See id. ¶¶ 234–37. Given that those transfers occurred two weeks after the arbitral awards were issued, and that a transfer was made to a purported insider, see id. ¶¶ 232–33 (alleging that Coleman is a Baldwin-affiliated company), there are enough facts to reasonably infer that Baldwin, Coleman, and Bridge CNMI made transfers to avoid liability under the Final Awards.

Defendants counter that, under CNMI common law, a transfer requires the disposition of property. Defs.' Resp. at 18–19 (citing Sullivan, Civ. No. 98-1293D at 8). Thus, according to Defendants, Baldwin and Bridge CNMI's actions in closing Idaho bank accounts and moving the funds to a bank outside of Idaho do not amount to a transfer. Id. at 18–19. Moreover, Defendants argue that, if Plaintiff's allegations are true, and Coleman is the alter ego of Baldwin and Bridge CNMI, the act of granting Coleman a real estate deed would not constitute a transfer because Baldwin would be transferring the property to himself. See id. at 19. These arguments fail to persuade. Defendants do not point to any authority that would limit the meaning of transfer or disposition of property under CNMI common law in such a way. And it is counterintuitive to suggest that a transfer of property from a debtor to an alter ego of that debtor would not be recognized as a fraudulent transfer under CNMI common law, especially when, as Plaintiff points out, the UVTA recognizes transfers to insider entities as a badge of fraud. See Pl.'s Reply at 8–9 (citing UVTA § 4(b)(1), (2) & cmt. 6 (Nat'l Conf. of Comm'rs. on Unif. State L. 2014),

https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=1a5715f1-679d-1a43-e82c-c2aaa2238f86). Although Plaintiff would still need to establish that Coleman was Baldwin's alter ego, at this stage Plaintiff has alleged enough to withstand a challenge that allowing it to amend its complaint to add this claim would not be futile.

### D. Prejudice and Undue Delay

"Prejudice to the opposing party is the most important factor" in determining whether to grant a motion to amend. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citations omitted). Defendants point to no prejudice that would result should the Court grant Plaintiff's motion.

Prejudice exists when a proposed amendment causes undue harm. See, e.g., id. at 1387–88 (finding prejudice because defendant would be required to undergo new and additional discovery and litigate new theories of liability). Although this is Plaintiff's third amendment, there has yet to be discovery. Other than raising the cost of their motions to dismiss, and suggesting that Plaintiff unduly delayed in asserting the proposed claims, Defendants can point to no tangible harm from having to confront the allegations at this point, as opposed to having had to confront them when the complaint was first filed. See Defs.' Resp. at 20 (arguing that serial amendments are prejudicial and referencing the cost of motions to dismiss). Defendants suggest that the information needed to assert the proposed claims was publicly available, and therefore the delay in adding these claims should weigh against granting the motion. See id. at 20 (noting the transactions at issue were publicly recorded months before this suit began). Given the nature of Plaintiff's

claims—i.e., that the named entities function as Baldwin's alter egos—it may not have been obvious to Plaintiff that any such information would be relevant to its claims, even if publicly available. Therefore, the Court does not find prejudice to Defendants or undue delay to be persuasive reasons to deny the motion.

## CONCLUSION

Allowing Plaintiff to amend the complaint would not be futile because the Proposed Third Amended Complaint sets forth sufficient facts to establish a plausible claim to relief, and allowing the amendment would not otherwise result in prejudice or undue delay. Accordingly, it is

ORDERED that the motion to amend is granted; and it is further

ORDERED that the Proposed Third Amended Complaint, see Dkt. 59 at Ex. A, is deemed filed as of May 21, 2021; and it is further

ORDERED that Plaintiff shall file a clean copy of the third amended complaint on or before July 16, 2021; and it is further

ORDERED that Defendants' time to respond to Plaintiff's third amended complaint shall run from the date of this Order.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated: July 15, 2021

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION AND ORDER - 20**