## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| **THE GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,**<br><br>        **Plaintiff,**<br>**v.**<br><br>**JOHN K. BALDWIN ET AL.,**<br><br>        **Defendants.** | **Case No.: 2:20-cv-00195-CRK**<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION/ TEMPORARY RESTRAINING ORDER** |

## I.     INTRODUCTION

On May 21, 2021, Plaintiff, the Government of the Lao People's Democratic Republic ("Plaintiff or "Lao PDR") moved for a temporary restraining order ("TRO") and preliminary injunction ("PI"). See [Pl.'s] Mot. for [TRO] & [PI], May 21, 2021, Dkt. 58 ("Pl.'s Mot. for TRO & PI"). Plaintiff sought to "halt the sale of the Hayden Lake Lodge and Parcels until the Court can consider the merits and enter judgment[,]" at which time Plaintiff would request the Court "appoint a receiver to oversee the sale, manage the sale, and dispose of the sale proceeds (up to the amount of the arbitral awards—$3.72 million)." See Memo. Supp. [Pl.'s Mot. for TRO & PI] at 3, May 21, 2021, Dkt. 58-1 ("Pl.'s Br."). Defendants oppose. See Defs.' Resp. to [Pl.'s Mot. for TRO & PI], July 13, 2021, Dkt. 96. ("Defs.' Resp."). Plaintiff has since submitted that the Court "need not restrain the sale of the Hayden Lake property"; rather, Plaintiff urges the Court to issue an order requiring that Defendants place a total of $3.7 million into a third-party escrow account. Pl.'s Reply Supp. [Pl.'s Mot.

for TRO & PI] at 1, July 16, 2021, Dkt. 105 ("Pl.'s Reply Br."). For the following reasons, Plaintiff's motion is denied.

## II.   BACKGROUND

The Court assumes familiarity with the facts as set forth in the July 16, 2021 Amended Memorandum and Order granting Plaintiff's third motion to amend its complaint, see Amended Memo. & Order, July 16, 2021, Dkt. 103 ("Memo. & Order") and recounts those facts necessary for disposition of the pending motion for a TRO and PI. On August 6, 2019, arbitral tribunals of the International Centre for Settlement of Investment Disputes ("ICSID") and the Permanent Court of Arbitration ("PCA") issued to Lao PDR two cost awards (the "Final Awards") that dismissed bilateral investment treaty claims brought by Lao Holdings N.V. ("LHNV") and Sanum Investments Ltd. ("Sanum"), and, according to Plaintiff, awarded Lao PDR a sum total of $3,727,35.98[1] "in fees, expenses, and costs of the arbitrations." See Third Amended Compl. ¶¶ 2–3, 109–12, 119–21, Exs. C–D, July 16, 2021, Dkt. 108.[2]

Pursuant to the New York Convention,[3] Lao PDR commenced this action seeking enforcement of the Final Awards against Defendants John K. Baldwin,

---

[1] The Third Amended Complaint states that Lao PDR received one award of $1,949,106.67 and another award of $1,778,252.21. Id. ¶ 120. Thus, according to the Third Amended Complaint, the total sum awarded is $3,727,358.98. Id. The Court would only note at this point that the sum total of $1,949,106.67 and $1,778,252.21 is $3,727,358.88.

[2] As of November 6, 2019, both LHNV and Sanum have filed actions in the High Court of Singapore seeking to set aside these awards. See id. ¶ 122–23.

[3] Plaintiff seeks enforcement pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 5, 1958, 21 U.S.T. 2517, T. I. A. S. No. 6997, as implemented within Title 9, Chapter 2 of the U.S. Code. 9 U.S.C. §§ 201, et seq. (the "Federal Arbitration Act").

**MEMORANDUM DECISION AND ORDER - 2**

Bridge Capital LLC, a Commonwealth of the Northern Mariana Islands ("CNMI")
Limited Liability Company ("Bridge Capital"), Coleman, LLC, a CNMI LLC
("Coleman"), and Campbell Holdings, LLC, an Idaho LLC ("Campbell"), (collectively,
"Defendants") as alter egos of non-party arbitral award debtors LHNV and Sanum.
See id. ¶¶ 1–4, 6–13, 238–52 (Count I).[4]  Moreover, Plaintiff claims that Defendants
are liable for having made voidable transfers under Idaho's Uniform Voidable
Transactions Act ("UVTA") and CNMI common law.  See id. ¶¶ 1–3, 5, 253–83
(Counts II and III).

Campbell is an Idaho LLC owned by Baldwin and Shawn A. Scott, managed
by Baldwin's nephew Bradley J. Shaw, and headquartered in Kootenai County,
Idaho.  Kersti H. Kennedy ¶ 4, Exs. A–B, May 21, 2021, Dkts. 58-2–4 ("Kennedy
Decl.").  Dianne Shaw, Baldwin's sister, is Campbell's registered agent.  See id.  By
December 5, 2019, around four and a half months after the arbitral awards were
issued, Campbell would acquire four parcels of real property, collectively referred to
as the "Hayden Lake Parcels,"[5] in Kootenai County, Idaho.  See id. ¶ 22, Ex. O.  Based
on Kootenai Property Tax Assessor web records, the Hayden Lake Parcels hold a
combined value of around $7 million.  See id. ¶¶ 19–20, Ex. K.

The Hayden Lake Parcels were previously owned by Lee's Bay LLC ("Lee's
Bay") and Synergy Investments LLC ("Synergy").  See id. ¶¶ 8, 16, Exs. D, E, F.

---

[4] Plaintiff has amended that complaint three times, with the most recent amendment
being the subject of the Court's Memorandum and Order.  See generally Memo. &
Order.
[5] Plaintiff alleges the Hayden Lake Parcels consist of four properties located at 15441
E. Hayden Lake Rd., 15553 E. Hayden Lake Rd., 15844 E. Hayden Lake Rd., and
15559 E. Hayden Lake Rd.  Third Amended Compl. ¶ 211.

**MEMORANDUM DECISION AND ORDER - 3**

Maxwell Drever ("Drever"), a real estate investor, was a manager for Lee Bay's and Synergy, see id. ¶¶ 8, 16, Exs. L–N, F, and Lee Bay's initial filings list "The Hayden Lake Trust" as the sole member.  See id. ¶ 8, Ex. E.  News articles and county court filings suggest that, sometime around 2018, Drever began experiencing financial difficulties.  See id. ¶ 14, Ex. G–H.  On July 23, 2018,  Lee Bay's and Synergy, borrowed $1,312,500 from Bridge CNMI, see id. ¶ 16, Ex. L, followed by another $400,000 in September, secured by a Deed of Trust on the Hayden Lake Parcels.  Id. ¶ 16, Ex. M.  On June 4, 2019, Bridge CNMI filed a UCC-1 Financing Statement with the State of Idaho's Secretary of State, listing, in relevant part, Synergy, Lee's Bay, Drever, and the Hayden Lake Trust as debtors.  Id. ¶¶ 8, 17, Ex. F.

On July 18, 2019, Glacier Bank, also known as Mountain West Bank, initiated foreclosure proceedings on the Hayden Lake Parcels against Lee Bay's and Bridge CNMI, alleging, upon information and belief, that it held a mortgage lien interest that was senior to Bridge CNMI's interest in the Hayden Lake Parcels.  Decl. of Taylor Bruun ¶¶ 4–5, Exs. A–B, June 8, 2021, Dkt. 71 ("Bruun Decl.").  Baldwin and one non-party partner formed "Campbell Holdings, LLC" in the CNMI ("Campbell CNMI") and loaned Campbell CNMI money to purchase the Hayden Lake Parcels from Mountain West for $3,750,000—a reduced price that had been negotiated by Drever.  See Decl. of Baldwin ¶¶ 12–14, Exs. H–I, June 9, 2021, Dkts. 70, 70-1–19 ("Baldwin's June 9th Decl.").  Baldwin states that he lent Campbell CNMI the funds for the sale with the understanding that the loan would be refinanced with a conventional loan, and that he would be promptly repaid.  Id. ¶ 12.  On August 13, 2019, Lee's Bay and Synergy and Campbell CNMI entered into a Purchase and Sale

Agreement, transferring title of the Hayden Lake Parcels for $3,800,000.00 on the condition that the proceeds be used to satisfy Mountain West's lien.  Id. ¶ 15, Ex. J (Section 3.1(q) of the Purchase and Sale Agreement).  In December 2019, Baldwin formed a new LLC—Defendant Campbell—in the state of Idaho, which subsequently merged with Campbell CNMI, with Defendant Campbell being the surviving entity. Id. ¶ 17, Ex. L.  As such, the Hayden Lake Parcels became the property of Defendant Campbell.  See id. ¶ 17.

Baldwin and Shaw state that the merger was arranged in order to take advantage of an opportunity to obtain a loan from the Idaho Central Credit Union ("ICCU") that was only available to Idaho or Washington residents.  See id. ¶¶ 16–17; Decl. of Bradley Shaw ¶¶ 5–6, Ex. B, June 8, 2021, Dkts. 73, 73-1–7 ("Shaw Decl.").  The ICCU approved a loan in the amount of $5,520,000, and on December 19, 2019, recorded a Deed of Trust on the Hayden Lake Parcels.  See Shaw Decl. ¶¶ 5–6, Ex. B.

Plaintiff alleges that a portion of the Hayden Lake Parcels underlying this dispute ("the Property") was placed on the market in September of 2019 for $12.9 million,[6] see Third Amended Compl. ¶ 228, and later reduced to $5.5 million in May of 2021.  Id.  After the Drevers defaulted on a lease arrangement, Campbell began

---

[6] Although the complaint alleges that the Hayden Lake Lodge, at 15559 E. Hayden Lake Dr., was initially placed on the market for $12.9 million, and the price was then reduced to $5.5 million, Third Amended Compl. ¶ 228, it is unclear whether the $12.9 million figure represented the price for all the Hayden Lake Parcels or for just one. See Third Amended Compl. ¶ 211 (listing individual values for the four different properties involved).  According to Shaw, the collective price for the Hayden Lake Parcels was reduced from $12,900,000.00 to $10,900,000.00, before Campbell created a separate listing for the Property at $5,500,000.00.  Shaw Decl. ¶ 10, Exs. E–G.

**MEMORANDUM DECISION AND ORDER - 5**

marketing the Property for sale.  Baldwin's June 9th Decl. ¶¶ 19–20, Exs. N–P; Shaw Decl. ¶¶ 9–10.  Although a website showing the Property could be found at johnbaldwinproperty.com,  Third Amended Compl. ¶ 229, Caleb Reed states that Baldwin's name was used as a placeholder for development purposes.  <u>See</u> Decl. of Caleb Reed ¶¶ 4–6, June 8, 2021, Dkt. 72.

In its third amended complaint, Plaintiff alleges that its claim against Campbell LLC under the UVTA stems from the company taking title of the Hayden Lake Parcels, putting a lien on the Property, and removing the loan proceeds.  Third Amended Compl. ¶ 260.  Plaintiff believes that the loan proceeds were likely transferred out of state to Drever or to a Baldwin affiliate.  <u>Id.</u> ¶ 267.  On the same day that it filed its Third Motion to Amend, Plaintiff filed this motion for a TRO and PI,[7] seeking an order enjoining the disposal, transfer, or encumbrance of certain property set forth in its filing.  <u>See</u> Pl.'s Mot. for TRO & PI.[8]  Plaintiff has since adjusted its request, and now seeks an order from this Court requiring that the

---

[7] On July 15, 2021, the Court granted Plaintiff's Third Motion to Amend.  <u>See</u> Memo & Order, July 15, 2021, Dkt. 101.

[8] Following a telephonic status conference on May 24, 2021, the parties agreed to postpone briefing on Plaintiff's motion for a TRO and PI pending the Court's ruling on Plaintiff's Third Motion to Amend the Complaint.  <u>See</u> Third Mot. Dkt. To Amend Compl., May 21, 2021, Dkt. 59; <u>see also</u> Scheduling Order, May 24, 2021, Dkt. 61. The parties also agreed that Defendants would provide Plaintiff at least 10 days' notice of any disposal, transfer or encumbrance of the property that is the subject of Plaintiff's Motion for TRO and PI.  <u>See</u> Order, May 25, 2021, Dkt. 62.  On July 6, 2021, Plaintiff relayed to the Court its receipt of 10 days' notice of Defendants' intended transfer of the subject property, and requested the Court schedule an emergency hearing on the motion to amend and a tentative hearing on the motion for a TRO and PI.  <u>See</u> Order, July 6, 2021, Dkt. 83.

**MEMORANDUM DECISION AND ORDER - 6**

various Defendants put $3.7 million in escrow.  See Pl.'s Reply Br. at 1.  On July 19, 2021, the Court heard oral argument on the matter.

## III.   STANDARD OF REVIEW

To obtain a preliminary injunction, Plaintiff must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without a preliminary injunction, (3) the balance of the equities favors Plaintiff, and (4) the injunction is in the public interest.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  However, each factor need not be given equal weight.  Nken v. Holder, 556 U.S. 418, 434 (2009).  Likelihood of success on the merits and irreparable harm are generally considered the most significant factors in evaluating a motion for injunctive relief.  See id. at 434.  The Court of Appeals for the Ninth Circuit supports a sliding scale approach, such that where there are "serious questions going to the merits" a preliminary injunction may issue so long as "a balance of hardships . . . tips sharply towards the plaintiff . . . [and] the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) ("Cottrell") (citation omitted).

## IV.   DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff fails to demonstrate that it will likely prevail on the merits.[9] Based on the filings thus far, even putting aside the open question of whether Baldwin is

---

[9] Plaintiff claims that Lao PDR is entitled to an alternative sliding scale test for the issuance of a preliminary injunction and that it need only show a fair chance of

the alter ego of the arbitral debtors, the Court cannot say that it is likely that the Plaintiff will be successful in establishing that Campbell is the alter ego of Baldwin, or that Campbell made a voidable transfer under the UVTA.

A transfer by a debtor is voidable if the "debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." I.C. § 55-913(1)(a). A debtor is anyone who is liable on a claim. I.C. § 55-910(6), and "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." I.C. § 55-910(3).

Under Idaho law,[10] whether to treat an LLC as an alter ego debtor would be an equitable question to be determined by the Court.[11] Cf., e.g., Simplot Livestock Co. v. Sutfin, No. 1:18-cv-0086-EJL-CWD, 2018 U.S. Dist. LEXIS 153225, at *15–20 (D. Idaho Sept. 6, 2018) ("Simplot"); In re Jaques, 615 B.R. 608, 626–31 (Bankr. D. Idaho 2020) ("In re Jaques"); Wandering Trails, LLC v. Big Bite Excavation, Inc., 156 Idaho 586, 591–92, 329 P.3d 368, 373–74 (Idaho 2014) ("Wandering Trails"). To establish that an entity is the alter ego of a defendant, there must be "(1) a unity of interest and ownership to a degree that the separate personalities of the [company]

---

success because it has shown the balance of the equities tips sharply in its favor. See Pl.'s Br. at 5, 7. As discussed below, Plaintiff failed to demonstrate the balance of the equities tips sharply in its favor.

[10] The Court applies Idaho law for purposes of examining the alter ego issue, without prejudice to Defendants' stated refusal to concede any choice of law issue that may arise. See Resp. Pl.'s Third Mot. to Amend Compl. at 11 n. 1, June 9, 2021, Dkt. 69.

[11] At issue here is whether Campbell LLC could be determined to be an alter ego of Baldwin. To ultimately recover, Plaintiff would also need to show that Baldwin is the alter ego of the arbitral debtors Sanum and LHNV.

**MEMORANDUM DECISION AND ORDER - 8**

and individual no longer exist," and it must be shown that (2) an inequitable result would follow if actions of the company are treated as such.  See Vanderford Co. v. Knudson, 144 Idaho 547, 556–57, 165 P.3d 261, 270–71 (Idaho 2007); see also, e.g., Simplot, 2018 U.S. Dist. LEXIS 153225, at *15–20; In re Jaques, 615 B.R. at 626–31; Lunneborg v. My Fun Life, 63 Idaho 856, 863–64, 421 P.3d 187, 194–95 (Idaho 2018) ("Lunneborg"); Wandering Trails, 156 Idaho at 593–97, 329 P.3d at 376–79  (Idaho 2014).

Among the indicia courts consider when determining whether there exists a unity of interest are the level of control a shareholder exercises over a corporation, observance of corporate formalities, whether the corporations are operated separately, whether the corporations keep separate books, and the decision-making process of the entity.  See, e.g., Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc., 95 Idaho 599, 602, 514 P.2d 594, 597 (Idaho 1973).  However, in Wandering Trails, the Idaho Supreme Court, in light of prior Idaho law, observed that a showing that certain members exercise full control over an LLC or failed to observe certain corporate formalities (e.g., "mak[ing] its business decisions by resolution or . . . capitaliz[ing the entity] in a manner other than capital calls"), although relevant to a corporate veil-piercing inquiry, is not dispositive when examining whether there exists a unity of interests between member and LLC.  See 156 Idaho at 594–95, 329 P.3d at 367–77; but see, e.g., Lunneborg, 163 Idaho at 867–73, 421 P.3d at 198–204 (holding "that in making [an] equitable determination [as to whether to disregard the corporate form,] trial courts are free to consider [a] myriad of factors cited by the

authorities catalogued herein, without resorting to a formulaic recitation of elements[.]").

With respect to determining whether an inequitable result would follow absent alter ego treatment, the Idaho Supreme Court has required "something less than an affirmative showing of fraud but something more than the mere prospect of an unsatisfied judgment." <u>Lunneborg</u>, 163 Idaho at 856, 421 P.3d at 201–02 (citation omitted). For example, in <u>Lunneborg</u>, the Idaho Supreme Court upheld a trial court's conclusion that allowing the defendants to escape personal liability by diverting corporate assets would be to "sanction an injustice" and "create an inequitable result." <u>Id.</u>, 163 Idaho at 870–71, 421 P.3d at 201–02.

As opposed to Plaintiff's prior motion to amend, on a motion for a preliminary injunction Plaintiff is not entitled to the assumption that the facts alleged in its pleadings are true as it was when seeking to amend its complaint for a third time. <u>See</u> Memo. Dec. and Order re: Third Mot. to Amend Compl., July 15, 2021, Dkt. 101, at 8–9. Instead, a movant must establish by clear and convincing evidence that it is entitled to the extraordinary remedy it seeks, including that it is likely to succeed on the merits of its claims. <u>See, e.g.</u>, <u>McCall Weddings, LLC v. McCall Wedding & Event Directory, LLC</u>, No. 1:14-cv-00315-REB, 2015 U.S. Dist. LEXIS 2674, at *2–8 (D. Idaho Jan. 9, 2015). Lao PDR has not met its burden.

Lao PDR claims that Baldwin and Bridge Capital exert control over a worldwide web of alter ego companies. <u>See, e.g.</u>, Pl's Br. at 2. Specifically, Lao PDR alleges that Baldwin is the alter ego of Bridge Capital, Campbell, Sanum, and LHNV. <u>See</u> Third Amended Compl. at ¶¶ 30, 73, 124–207, 209, 250, 257–59. Plaintiff's theory

**MEMORANDUM DECISION AND ORDER - 10**

is essentially that Baldwin is individually liable for Sanum's and LHNV's debt to Lao PDR pursuant to the Final Awards and that Campbell's and Bridge Capital's assets can be used to satisfy that debt because those companies are in fact just extensions of Baldwin.  See id. at 238–68.

However, Plaintiff has not met its burden to demonstrate that it is likely to succeed in showing that Campbell is the alter ego of Baldwin.  In support of its alter ego theory, Lao PDR first points to Baldwin's ownership of Campbell, which alone is not evidence of Campbell being Baldwin's alter ego.  See, e.g., In re Brown, 250 B.R. 382, 384–85 (Bankr. D. Idaho 2000).  In fact, Baldwin is not the sole owner of Campbell: He owns only 50%, with the other 50% being owned by Shawn A. Scott. See Baldwin's June 9th Decl. at Ex. K.  Next, Lao PDR notes that although Campbell is a manager managed LLC, it is Baldwin, not the manager, whose name appears on the contract of sale and related agreements and who directed the plan to finance and then refinance the acquisition of the Hayden Lake Parcels.  Pl.'s Reply Br. at 6. However, the inference that Plaintiff asks the court to draw from these facts ignores both Campbell CNMI's and Campbell's operating agreements.  See Baldwin's June 9th Decl. at Exs. H, K.  Campbell CNMI's operating agreement stated that although it was a manager managed LLC, "all decisions affecting the business of the company" required member approval.  Baldwin's June 9th Decl. at Ex. H ¶ 5(b).  Indeed, the manager of Campbell CNMI was only permitted to execute

> deeds absolute, mortgages (including, without limitation, deeds of trust, financing statements, chattel mortgages, pledges, conditional sales contracts, and similar security interests), leases, contracts, dedications of or easements on real property owned by the Company, and all other documents, agreements and instruments

**MEMORANDUM DECISION AND ORDER - 11**

with the approval of the members.  Id. at ¶ 5(c).  Similarly, Campbell's operating agreement provides that "[u]nanimous written approval of the Members is required prior to any action by the Manager with respect to…(2) transfer of the Company's interest in property of any kind, including by deed, lease (if the Company is the landlord), assignment, or other conveyance."  Baldwin's June 9th Decl., Ex. K ¶ 5(c).  Therefore, even though the day-to-day operations of Campbell CNMI and Campbell were to be handled by a manager, the operating agreements make clear that all major decisions must be approved by members.  Given that framework, Plaintiff's argument that Baldwin's involvement in the transactions at issue is evidence of a disregarding of corporate formalities is not persuasive.

Next, Plaintiff alleges, without evidence, that Campbell is "underfunded."  Pl.'s Reply Br. at 7.  Campbell holds title to millions of dollars' worth of real property and there is no allegation that Campbell has not been paying the carrying costs associated with the ownership of that property.  See Baldwin's June 9th Decl. ¶¶ 17–19.  Thus, the basis on which Plaintiff asserts that Campbell is underfunded is not clear. Plaintiff seems to conflate the fact that Campbell repaid Baldwin's loan with its assertion that Campbell is underfunded, see Pl.'s Reply Br. at 7; however, Campbell repaid Baldwin's loan in connection with its refinancing, pursuant to which it received $1.7 million more than it owed Baldwin.  See Pl.'s Br. at 7.  Plaintiff has not demonstrated that Campbell is underfunded.  Moreover, and as discussed more fully below, the Court is not persuaded by Plaintiff's theory that the transactions related to the Hayden Lake Parcels are fraudulent.

Finally, even if Plaintiff had met its burden to show that Campbell's separate corporate personality "has ceased to exist," Plaintiff failed to demonstrate that any inequitable result would follow. As Plaintiff concedes, it must show more than just "the prospect of an unsatisfied judgment." Id. at 4–5 (quoting Lunneborg v. My Fun Life, 163 Idaho at 870, 421 P.3d at 201). However, an "unsatisfied judgment" is exactly the inequity that Plaintiff alleges. Id. As discussed below, the court does not find that Plaintiff has met its burden of demonstrating a likelihood of success in proving that Campbell's transactions were fraudulent. Therefore, the court declines to find that those same transactions are sufficient to show something more than the possibility of an unsatisfied judgment. In any event, Plaintiff's argumentation regarding Baldwin's and Bridge Capital's ability to satisfy a potential judgment is ambiguous. On one hand, Plaintiff argues that without an order from this Court freezing assets in Idaho it will not be able to recover, but on the other hand it acknowledges that Baldwin and Bridge Capital have access to "significant liquidity." Kennedy Decl. ¶ 7. For all the foregoing reasons, Plaintiff has not met its burden of clearly demonstrating that Campbell is the alter ego of Baldwin or that inequity will result absent an injunction.[12]

_____

[12] The parties do not substantially address the question of whether Baldwin and Bridge Capital are the alter egos of Sanum and LHNV in this motion. Plaintiff asserts that the arbitral tribunals have found that Baldwin was the "directing mind" of Sanum and LHNV and Defendants counter that the arbitral tribunal's language merely connoted agency. Although the court finds that in order to succeed on its claims Plaintiff must establish that Baldwin and/or Bridge Capital is the alter ego of Sanum and LHNV, the court need not reach that question here as Plaintiff has failed to demonstrate that it is likely to succeed in its claim that Campbell is the alter ego of Baldwin. Also, for the purposes of this motion it is sufficient to say that Plaintiff conceded at oral argument that it was not seeking to enjoin the transfer out of Idaho

Plaintiff's arguments regarding the allegedly fraudulent transfers relating to the Hayden Lake Parcels fare no better than its alter ego arguments. The parties agree on the broad strokes of the facts surrounding Campbell's acquisition of the Hayden Lake Parcels, only disagreeing on what inferences the Court should draw from those facts. The parties agree that the Hayden Lake Parcels were owned by two entities controlled by Drever, which ultimately had significant financial difficulties. In an attempt to forestall foreclosure, Drever's companies obtained loans from Bridge in 2018; however, Drever's financial problems continued and a foreclosure action was ultimately instituted in July 2019. Campbell CNMI, which had been formed in April 2019, acquired title to the Hayden Lake Parcels pursuant to a series of agreements whereby Baldwin loaned Campbell CNMI funds for the purchase price and Drever's companies used the funds to settle the foreclosure action, which was dismissed upon receipt of payment. Campbell CNMI was ultimately merged with Campbell, which took title to the Hayden Lake Parcels, obtained financing at a lower interest rate from ICCU, and repaid to Baldwin the amount initially loaned to Campbell CNMI to purchase the Hayden Lake Parcels. See generally Kennedy Decl.; Baldwin's June 9th Decl.

Plaintiff claims that those facts demonstrate that the Hayden Lake Parcels were acquired and are now being sold to defraud Lao PDR of its ability to enforce its

---

of any sale proceeds to satisfy Bridge Capital's liens on the Hayden Lake Parcels. As the sole basis for Plaintiff's irreparable harm argument is that any funds transferred out of Idaho will be unrecoverable, Plaintiff's failure to seek to enjoin such transfer with respect to the funds due to Bridge Capital at closing has conceded that it will not be harmed by such transfer. The court will therefore not enjoin Bridge Capital from disposing of the funds it receives from the closing.

**MEMORANDUM DECISION AND ORDER - 14**

arbitral awards, while Defendants claim that there is nothing abnormal about the way this series of complex real estate and financing transactions was structured or executed.  Here, as opposed to Plaintiff's motion to amend its complaint, the Court must weigh the parties' theories based on the evidence presented.  Based on that evidence, the Court finds that Plaintiff fails to meet its burden of clearly and convincingly demonstrating a likelihood of success.[13]

Plaintiff notes that the Final Awards were issued on August 6, 2019, and just a week later, on August 13, 2019, Campbell CNMI, Baldwin, and Drever worked out a deal for Campbell CNMI to acquire the Hayden Lake Parcels.  However, these properties had been in distress for over a year by the time of the transfer.  See, e.g., Bruun Decl. at Exs. A–B.  The interested parties must have known the foreclosure action could be instituted long before it was filed.  That the Final Awards were issued during the same time period as the acquisition of the Hayden Lake Parcels by Campbell CNMI appears to be a coincidence rather than a trigger.  Moreover, Campbell CNMI was formed months before the Final Awards were issued, and Plaintiff has not shown that there is anything unusual about a lender (i.e. Bridge Capital) not wanting to assume title ownership of real property, with all the attendant costs and obligations, when it does not have to do so.  Baldwin's June 9th Decl. ¶ 18.  Likewise, Defendants' explanation for why Campbell was formed and Campbell CNMI was merged into Campbell is persuasive.  Without any contradictory evidence—and Plaintiff offers none—there is no reason to doubt that Campbell was

---

[13] Even under Plaintiff's proffered standard of a preponderance of the evidence, the Court finds the Plaintiff has not met its burden.

**MEMORANDUM DECISION AND ORDER - 15**

formed to take advantage of low-interest rates offered by ICCU and refinance the more onerous loan from Baldwin. Indeed, Plaintiff seems to concede that Campbell, as opposed to Campbell CNMI, was formed to take advantage of a low interest loan offered by ICCU. See Pl.'s Reply Supp. Third Mot. to Amend Compl. at 5, July 6, 2021, Dkt. 82; Third Amended Compl. ¶ 226. Likewise, there is nothing suspicious of Baldwin taking repayment on the loan outside of Idaho, as the loan was originally made to a CNMI company, presumably in CNMI, and Baldwin is not (leaving aside any alter ego arguments) a resident of Idaho. Finally, there is nothing that appears untoward about Campbell refinancing for more than the original loan amount. Plaintiff offers no evidence that Campbell's refinancing was unusual or out of the ordinary. Defendants' explanation that the excess funds have been used to pay the carrying costs of the properties is reasonable. See Resp. Pl.'s Third Mot. to Amend Compl. at 17, June 9, 2021, Dkt. 69. Plaintiff offers noting more than speculation and conjecture.

Most troubling for Plaintiff is that these transactions do not appear to have anything to with Lao PDR's dispute with Sanum and LHNV. Indeed, these transactions appear to have been going on for years. Baldwin's June 9th Decl. ¶¶ 4–22. To accept Plaintiff's theory would be to consider that Baldwin orchestrated this complex series of transactions beginning over a year before the Final Awards were issued with the sole purpose of directing a series of companies to transfer assets in and out of Idaho to defraud Lao PDR of cost awards against facially unrelated companies that Baldwin did not even know would be issued. This theory has little evidentiary support. Although these transactions did take place as Plaintiff

**MEMORANDUM DECISION AND ORDER - 16**

describes, there is nothing particularly unusual about them to lead the court to infer that they were designed to defraud Lao PDR.

Although Defendants' explanation that Baldwin and Bridge Capital closed their Idaho bank accounts seven months after their local bank was acquired by a larger bank is not wholly satisfactory, that fact alone is not sufficient to establish fraudulent conveyances. While Plaintiff asserts that "Defendants' alternative narrative is no basis for blocking relief," it is Defendants who have submitted multiple sworn statements based on personal knowledge with corresponding documentation backing up those statements. Pl.'s Reply Br. at 3. Plaintiff has merely submitted sworn statements from attorneys, and while those statements claim to be based on personal knowledge, the only personal knowledge the attorneys have is their after-the-fact investigation of the documents evidencing the transactions. None of the attorneys' conclusions about those documents, other than that they exist and state what they state, serves to refute Defendants' explanations for these transactions. Thus, Plaintiff failed to meet its burden of establishing a likelihood of success on the merits.

**B. Irreparable Harm**

A plaintiff must show that irreparable injury is "likely" and "imminent" in the absence of preliminary injunctive relief. <u>Winter</u>, 555 U.S. at 22; <u>Caribbean Marine Servs. Co., Inc. v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988). An irreparable injury is one that cannot be undone or compensated. <u>See</u> <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974). Generally, an allegation of financial loss alone, however substantial, which is compensable with monetary damages, is not irreparable harm if such

corrective relief will be available at a later date. See id. at 90. Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id. Although where money damages are available harm is not thought to be irreparable, the Court may find harm irreparable where there is a showing that collection of those damages will not be possible. Id. ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1219–22 (C.D. Cal. 2007) (noting damages are not a remedy if they cannot be collected). Therefore in order to demonstrate a likelihood of irreparable harm here the Plaintiff must demonstrate through probative evidence that if an injunction is not issued the plaintiff would not be able to collect its damages from the Defendants.

Plaintiff fails to meet its burden to demonstrate irreparable harm. It offers no evidence that the Defendants here are insolvent,[14] or that a judgment of this court would be unenforceable against the Defendants whether in Idaho or elsewhere in the United States, including the CNMI. See U.S. CONST. art. IV, § 1 (Full Faith and Credit Clause); 28 U.S.C. § 1738. Plaintiff's concern is that any proceeds from the sale may not be found within the state after the sale. Pl.'s Br. at 8–9. But Plaintiff does not explain how it will be precluded from otherwise enforcing a judgment of this

---

[14] Indeed, it would seem unlikely that a person who has the resources to make a loan of $3.8 million dollars within a five-day deadline would be judgment proof but for the proceeds of the sale of the Hayden Lake Parcels.

**MEMORANDUM DECISION AND ORDER - 18**

Court.  Instead, Plaintiff argues that Defendants are secreting assets elsewhere in the United States and that dissipation of assets constitutes irreparable harm.  See Pl.'s Br. at 7 (citing Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) ("Johnson"); In re Estate of Ferdinand Marcos, Human Rights Litig., 25 F.3d 1467, 1480 (9th Cir. 1994)).

Pointing to what it purports to be a pattern of secreting assets, Plaintiff argues that it faces irreparable harm owing to the likelihood that Defendants will dissipate the proceeds from the sale of the Property.  See Pl.'s Br. at 7–9; Pl.'s Reply Br. at 8–10 (citing, inter alia, Johnson, 572 F.3d at 1085).  This pattern, according to Plaintiff, is evidenced by the fact that Sanum and LHNV are allegedly shell entities used to shield Baldwin and Bridge LLC from liability, see Pl.'s Br. at 8;  (citing Second Amended Compl., passim, Mar. 19, 2021, Dkt. 52); and that, after Lao PDR threatened to enforce the awards in Idaho, Baldwin and Bridge LLC closed their Idaho bank accounts, and Baldwin transferred real property to Coleman.  See Pl.'s Br. at 7–8 (citing Decl. of Baldwin, passim, Sept. 21, 2020, Dkts. 31-1–12 ("Baldwin's Sept. 21st Decl."), Decl. of Kemp Smith ¶ 4, Oct. 22, 2020, Dkt. 37-2,); Pl.'s Reply Br. at 8–9 (citing Baldwin's Sept. 21st Decl. ¶ 9).  Plaintiff also asserts that Baldwin caused real property that should have gone to Bridge Capital to be placed in Campbell's name before encumbering that property with a lien, see Pl.'s Br. at 8 (citing Kennedy Decl. ¶ 18),[15] that Campbell repaid $3.8 million to Baldwin in

---

[15] As support, the Declaration cites to an August 13, 2019 Warranty Deed.  See Kennedy Decl. ¶ 18, Ex. N.  However, the Warranty Deed does not support Plaintiff's allegation that the real property should have gone to Bridge Capital.

**MEMORANDUM DECISION AND ORDER - 19**

December of 2019, <u>see</u> Pl.'s Reply Br. at 8 (citing Defs.' Resp. at 3–4), and that Baldwin himself allegedly admits that he plans to dissipate the subject assets in the form of dividends. <u>See</u> Pl.'s Reply Br. at 8–9 (citing Decl. of Baldwin ¶ 12, Dkt. 96-7, July 14, 2021). Moreover, Plaintiff asks the Court to consider Baldwin's "long prior history of fraud," Pl.'s Reply Br. at 4–5 (citing Decl. of David Branson Supp. Pl.'s Resp. to Bridge Capital, LLC's Mot. to Dismiss Ex. B ¶¶ 135-139, 148, 154–62, 167, 278–80, Ex. C ¶¶ 134–38, 147, 153–61, 166, Aug. 31, 2020, Dkt. 28-1; Declaration of David J. Branson Ex. A ¶¶ 189–210, July 16, 2021, Dkt. 105-1), as well as Baldwin's prior representations to the Court that he does not own property in Idaho and had not made loans to Idaho residents or companies, <u>id.</u> (citing Memo. Supp. Def. John K. Baldwin's Mot. to Dismiss at 2, 4, 5–6, 8, Oct. 1, 2020, Dkt. 34-1; Decl. of Clay Crawford ¶ 14, May 4, 2021, Dkt. 56-2)—representations which Plaintiff asserts have since been proven false. <u>Id.</u> at 5. Lacking evidence from Defendants as to where the rest of Baldwin's assets may be, Plaintiff therefore argues that demonstrating a likelihood of dissipation of assets is enough to show irreparable harm; absent some form of injunctive relief, Lao PDR may have no ability to recover money damages. <u>See</u> Pl.'s Br. at 8–9; Pl.'s Reply Br. at 9.

Plaintiff's arguments fail for two reasons. First, the Court is not persuaded that the arguments Plaintiff advances in seeking to demonstrate a pattern of secreting assets are supported by clear and convincing evidence.[16] As discussed in

---

[16] With respect to Plaintiff's allegations concerning Baldwin's and Bridge Capital's history of allegedly criminal behavior relating to Sanum and LHNV, the Court is not persuaded that those allegations amount to a pattern of dissipating or secreting assets. The arbitral awards are merely for costs and fees associated with those

the merits section above, the Court is not persuaded that many of the inferences Plaintiff would have the Court draw from the alleged facts follow.  For example, it does not necessarily follow from Baldwin and Bridge LLC's closure of their Idaho Independent Bank accounts that Baldwin and Bridge LLC intended to secrete assets to avoid enforcement of the arbitral awards given the fact that Idaho Independent Bank had been acquired a few months prior by First Interstate Bank.  See Baldwin's Sept. 21st Decl. ¶¶ 8–9.  Given that Lao PDR declared its intent to seek enforcement in October 2019, see Third Amended Compl. ¶ 364, the fact that Baldwin began closing the accounts as early as January 7, 2019 gives credence to another reasonable inference: that the closures were the result of ordinary commercial considerations. Baldwin's Sept. 21st Decl. ¶¶ 9–11, Exs. 3–4.  Nor is there evidentiary support for Plaintiff's inference that the conveyance of the Hayden Lake Parcels to Campbell demonstrates an intent to conceal the transfer of property.  See Pl.'s Br. at 8 (citing Kennedy Decl. ¶ 18).[17]

Second, even if Plaintiff's averments were supported by clear and convincing evidence, or even taking for granted Plaintiff's position that it must prove its allegations by the preponderance of the evidence, Plaintiff has not shown that— armed with a judgment of this Court—it would not be able to collect the amounts owed under the arbitral awards elsewhere.  Plaintiff does not cite any evidence that

proceedings, there was no finding that Lao PDR could not recover any money it was owed under by Sanum and LHNV as a result of those entities, Baldwin, or Bridge Capital's dissipating assets.

[17] As support, the Declaration cites to an August 13, 2019 Warranty Deed.  See Kennedy Decl. ¶ 18, Ex. N.  However, the Warranty Deed does not support Plaintiff's allegation that that the real property should have gone to Bridge LLC.

**MEMORANDUM DECISION AND ORDER - 21**

any transfer of assets out of Idaho by Defendants would render them judgment proof. Plaintiff points out that Baldwin states that Campbell intends to issue a dividend to its members, who would then reinvest the money into Bridge Capital, which would deploy the capital in the normal course of business.   Declaration of Jonathan K. Baldwin, dated July 14, 2021, Dkt. 96-7, ¶ 12.   However, this statement does not amount to "dissipation," which implies that the assets would be squandered.   Nor can Baldwin's statement support Plaintiff's contention that the assets would be secreted away.   Baldwin explicitly states what will happen to the funds.   Id.   Bridge Capital is a lender that is required to keep books and records of its assets and liabilities.

This case stands in stark contrast to those cited by the Plaintiff.   Johnson is inapposite as in that case the court enjoined the advancement of the legal fees from the company where one defendant "himself alleged that Defendants even now would not be able to pay their legal bills  . . . [and had] already expended the $5 million in D & O insurance . . .to defend this suit."   Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009).   In In re Estate of Ferdinand Marcos, the court was presented with evidence that in connection with a judgment that would likely exceed $320 million the Estate had moved that amount to banks in Switzerland and Hong Kong and the defendants had been twice enjoined from "transferring or secreting assets, based on a pattern and practice of secreting assets through foreign bank accounts by the use of aliases and shell corporations."   25 F.3d 1467, 1480.   Although Plaintiff here suggests that Defendants are using a web of companies through which to move assets, Pl.'s Br. at 7–8, it lacks any evidence to demonstrate that these assets are being moved beyond the reach of U.S. Courts or that the Defendants would otherwise be

**MEMORANDUM DECISION AND ORDER - 22**

unable to pay a judgment should the plaintiff be successful.  Moreover, Plaintiff itself contends that Baldwin and Bridge Capital have significant liquidity.  See Memo. in Supp. of Third Mot. to Amend Comp., May 21, 2021, Dkt. 59-1, at 4.  Here, Plaintiff relies on conjecture and speculation.  Plaintiff has not presented any evidence that Baldwin or Bridge Capital does not have any assets in CNMI, where they are located, or that their other assets (including an Idaho property transferred by Baldwin to Defendant Coleman in August 2019) would be dissipated, transferred offshore, or otherwise unavailable to satisfy a judgment of this court.  Plaintiff has failed to establish a likelihood of irreparable harm.

### C. Balance of Harms

When considering a motion for a preliminary injunction, the court must "balance the competing claims of injury and must consider the effect" that granting or denying relief would have on each party.  Winter, 555 U.S. at 24.  Balancing the hardship also requires the court to balance the equities.  See id. at 20.

In this case the equities tip in favor of the Defendants.  As discussed above, Plaintiff has not demonstrated how it will be harmed should the court not issue an injunction.  Plaintiff does not assert that any Defendant is insolvent.  Nor has Plaintiff offered evidence that Defendants themselves, or their assets, are beyond the reach of U.S. Courts.  Quite the contrary, Plaintiff acknowledges that Defendant Campbell is located in Idaho and Bridge is located in the CNMI, which is a Commonwealth of the United States, and Baldwin represents under penalty of perjury that he is a resident of the CNMI.  See Kennedy Decl. ¶ 22; Third Amended Compl. ¶ 8; Decl. of John K. Baldwin ¶ 5, Sept. 29, 2020, Dkt. 34-2,; Saipan Stevedore

Co. v. Dir., Off. Of Workers' Comp. Programs, 133 F.3d 717, 720 (9th Cir. 1998).  The only harm that Plaintiff alleges will result from a denial of this motion is that Lao PDR will not be able to satisfy a judgment against Baldwin or Bridge Capital with assets from Idaho.  Pl.'s Reply Br. at 1.  However, as discussed above, the court finds that Plaintiff has not demonstrated that irreparable harm is likely. Defendants assert that Campbell would not be able to pay its taxes and that Bridge Capital would be prevented from employing its capital in new business ventures. Defs.' Resp. at 17; Baldwin Decl. ¶ 12 July 14, 2021, Dkt. 96-7. Although this harm is not substantial on its own, when viewed in the context of Plaintiff's failure to demonstrate a likelihood of harm, it is enough to refute Plaintiff's assertion that the balance of the equities tips sharply in Lao PDR's favor.  Indeed, the balance of the equities is at most neutral, and therefore Plaintiff has failed to make a clear showing that the balance of the equities weighs in its favor.

### D. Public Interest

The public interest factor requires the Court "consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." Cottrell, 632 F.3d at 1138 (quoting Cal. Pharmacists Ass'n v. Maxwell–Jolly, 596 F.3d 1098, 1114–15 (9th Cir.2010)).  Where injunctive relief affects only the parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138–39 (9th Cir. 2009) citing Bernhardt v. L.A. County, 339 F.3d 920, 931 (9th Cir.2003).

**MEMORANDUM DECISION AND ORDER - 24**

Both the Defendants and Plaintiff here claim the general observance of the law as demonstrating the public interest is in their favor. Pl.'s Br. at 9 (claiming the state's interest in preventing fraud within its borders renders an injunction within the public interest); Defs.' Resp. at 18–19 (arguing there is no public interest implicated here, and if there is, it would be the public interest in not allowing interference with the transfer of real property). Because the court does not find that the conveyances related to the Hayden Lake Parcels are likely to be fraudulent, the public's interest in restraining such conveyances is not implicated here. Although it is always in the public interest that the laws be upheld, neither party points to a particular public interest with respect to the proposed injunction and therefore the public interest factor here is neutral.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's motion is denied; and it is further

**ORDERED** that the Court's prior Order restraining the sale of the Hayden Lake Parcels (Dkt. 93) is vacated.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated: July 20, 2021

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION AND ORDER - 25**