UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,<br><br>      Plaintiff,<br>v.<br><br>JOHN K. BALDWIN; BRIDGE CAPITAL, LLC; COLEMAN LLC; and CAMPBELL HOLDINGS LLC,<br><br>      Defendants. | Case No.: 2:20-cv-00195-CRK<br><br>MEMORANDUM DECISION AND ORDER RE: MOTION FOR JURISDICTIONAL DISCOVERY |

## I.      INTRODUCTION

Before the Court is Plaintiff The Government of the Lao People's Democratic Republic's ("Lao PDR") motion for jurisdictional discovery.  See Pl.'s Mot. for Jurisdictional Disc., Aug. 5, 2021, ECF No. 120 ("Pl. Mot."); see also Am. Memo. in Supp. of Pl.'s Mot. for Jurisdictional Disc., Aug. 5, 2021, ECF No. 123 ("Rev. Pl. Br."). Lao PDR requests discovery of six categories of documents and a non-party deposition, which it claims will establish (1) specific jurisdiction over Defendants John K. Baldwin ("Baldwin") and Bridge Capital, LLC ("Bridge"); (2) quasi in rem jurisdiction over Baldwin and Bridge; and (3) Baldwin's status as the alter ego of non-parties Sanum Investments Limited, a Macau limited company ("Sanum") and Lao

MEMORANDUM DECISION AND ORDER - 1

Holdings, N.V., a public limited company incorporated in Aruba ("LHNV").[1] See Decl. of Robert K. Kry, Ex. C, Aug. 5, 2021, ECF No. 120-2 ("Discovery Demands"). Defendants Baldwin and Bridge oppose the motion on the grounds that (i) the proposed discovery could not lead to any facts that would establish specific jurisdiction; (ii) Lao PDR cannot establish quasi in rem jurisdiction as a matter of law; (iii) non-party discovery is irrelevant to Lao PDR's jurisdictional claims over Baldwin and Bridge; and (iv) Lao PDR's requests are vague, overly broad, and unduly burdensome. See generally Resp. to [Pl. Mot.], Sept. 21, 2021, ECF No. 128 ("Def. Br."). For the following reasons, Lao PDR's motion is granted in part and denied in part.[2]

## II.   BACKGROUND

### A. Factual Background

Lao PDR and various Baldwin-connected entities have a long history related to gambling ventures in Laos. See Third Am. Compl., ¶¶ 77–79, July 16, 2021, ECF No. 108 ("TAC"). A dispute arose between Lao PDR and two of those entities, Sanum and LHNV. See id. ¶¶ 82–84, 88–91. Lao PDR obtained arbitral awards against Sanum and LHNV in 2017 (the "Awards"), and there have been various legal

---

[1] Lao PDR alleges that discovery might lead to a finding of general jurisdiction over Baldwin and Bridge; however, Lao PDR's allegation of possible general jurisdiction is speculative. See Rev. Pl. Br. at 6.

[2] Because the Court is granting the motion in part, the Court will reserve its decision on the pending Motion to Dismiss the Third Amended Complaint, see ECF No. 121, until after jurisdictional discovery has been completed and the parties submit supplemental briefing on the significance of the materials produced in accordance with the Court's order.

**MEMORANDUM DECISION AND ORDER - 2**

proceedings to enforce or set aside those Awards, including this action. See id. ¶ 122, Exs. C and D; see also Def. Br. at 3 n.2.

Sanum and LHNV commenced arbitrations under bilateral investment treaties between China and Laos and the Netherlands and Laos, respectively. See TAC, Exs. C and D. Sanum and LHNV asserted that Lao PDR violated its treaty obligations by dealing unfairly with the companies and unlawfully and without compensation expropriating their property in connection with the gaming ventures Sanum and LHNV were jointly operating with a Laotian company, ST Holdings, in Laos. See id. Ex. C at ¶¶ 1–2, 65–75, Ex. D at ¶¶ 1–2, 63–73. After initially asserting counterclaims, Lao PDR abandoned those claims and defended the arbitrations by asserting various alleged crimes and bad faith actions taken by Sanum and LHNV. Id. Ex. C ¶¶ 88–95, Ex. D ¶¶ 86–93; see also Memo. in Supp. of Defs.' Mot. to Dismiss for Failure to State a Claim, 3, May 4, 2021, ECF No. 57-1. Both arbitral tribunals found that Lao PDR did not violate its treaty obligations in its dealings with Sanum and LHNV, respectively, and awarded costs, fees, and expenses to Lao PDR totaling $3,727,358.98. TAC Ex. C ¶¶ 281–94, Ex. D ¶¶ 251–66.

Lao PDR alleges that it should be permitted to enforce the Awards against Baldwin and Bridge because various entities, including Sanum, LHNV, Bridge, and defendants Coleman LLC and Campbell Holdings LLC, are nothing more than Baldwin's alter egos. See TAC ¶¶ 13, 124–202, 238–52. Baldwin and Bridge assert that the Court lacks personal jurisdiction over them and therefore cannot make any determination regarding their alter ego status. See Memo. in Supp. of [Baldwin and

**MEMORANDUM DECISION AND ORDER - 3**

Bridge's] Mot. to Dismiss [TAC] for Lack of Personal Jurisdiction or Improper Venue, 6–7, Aug. 5, 2021, ECF No. 121-1 ("Def. Br. Mot. to Dismiss TAC")

### B. Procedural Background

The procedural history of this case is long and convoluted, so only the history relevant to the current motion is discussed.  Lao PDR commenced this action by filing a summons and complaint on April 21, 2020.  See Compl., Apr. 21, 2020, ECF No. 1. Lao PDR's initial complaint alleged a single cause of action—to enforce the Awards— against Baldwin and Bridge.  Id. ¶¶ 148–62.  On July 16, 2020, before Baldwin had been served with a summons, Bridge filed a motion to dismiss the complaint for lack of personal jurisdiction on the grounds that Lao PDR had named and served the incorrect company "Bridge Capital, LLC."  See Def. [Bridge's] Mot. to Dismiss, July 16, 2020, ECF No. 21 ("First Mot. to Dismiss").  In response, Lao PDR moved to amend its complaint to include the correct company "Bridge Capital, LLC," opposed the First Mot. to Dismiss on the grounds that it should be permitted to conduct jurisdictional discovery to establish personal jurisdiction, and simultaneously moved to conduct jurisdictional discovery.  See Mot. to Am. Compl., Aug. 31, 2020, ECF No. 26; Mot. to Conduct Jurisdictional Disc., Aug. 31, 2020, ECF No. 27; Pl.'s Resp. to [Bridge's] Mot. to Dismiss, Aug. 31, 2020, ECF No. 28.  Bridge opposed Lao PDR's motions to amend the complaint and for jurisdictional discovery.  See Resp. to Pl.'s Mot. to Conduct Jurisdictional Disc., Sept. 21, 2020, ECF No. 32; Resp. to Pl.'s Mot. to Am. Compl., Sept. 21, 2020, ECF No. 33; see also Reply in Supp. of [Bridge's] Mot. to Dismiss, Sept. 21, 2020, ECF No. 31.

On October 1, 2020, Baldwin moved to dismiss the initial complaint for lack of personal jurisdiction. See [Baldwin's] Mot. to Dismiss, Oct. 1, 2020, ECF No. 34. After the parties entered into multiple stipulations to align the briefing schedules of the various pending motions, see ECF Nos. 35, 36, 39, and 40, the motions were all fully briefed as of December 11, 2020. See Pl.'s Resp. to [Baldwin's] Mot. to Dismiss [Dkt. 34]; Pl.'s Reply in Supp. of Mot. to Am. Compl. [Dkt. 26]; AND Pl.'s Reply in Supp. of Mot. to Conduct Jurisdictional Disc. [Dkt. 27], Oct. 22, 2020, ECF No. 37; Reply in Supp. of [Baldwin's] Mot. to Dismiss [Dkt. 34], Dec. 11, 2020, ECF No. 41. The Court then ordered oral argument of the various pending motions to be conducted on March 15, 2021. See Order, Dec. 18, 2020, ECF No. 42; Ltr. Re Oral Arg. Questions, Feb. 19, 2021, ECF No. 43; Amended Order, March 2, 2021, ECF No. 44.

However, on March 5, 2021, Lao PDR filed a second motion to amend its complaint to (1) include a cause of action under the Uniform Voidable Transactions Act; (2) add Coleman, LLC as a party; and (3) add additional allegations in support of its argument that the Court has personal jurisdiction over the defendants. See Second Mot. to Am. Compl., March 5, 2021, ECF No. 45. The Court conducted oral argument on March 15, 2021, see Oral Argument, March 15, 2021, ECF No. 46, after which the parties entered into a stipulated schedule pursuant to which Lao PDR would file its Second Proposed Amended Complaint and the parties would brief their renewed motions to dismiss and for jurisdictional discovery, respectively. See Stipulation, March 18, 2021, ECF No. 49; see also Scheduling Order, March 18, 2021, ECF No. 50.

MEMORANDUM DECISION AND ORDER - 5

On March 19, 2021, Lao PDR filed its Second Amended Complaint and the Court granted Lao PDR's unopposed second motion to amend its complaint.  See Second Am. Compl., March 19, 2021, ECF No. 52; Order, March 19, 2021, ECF No. 53.  Subsequently, Baldwin and Bridge filed a new motion to dismiss for lack of personal jurisdiction.  See [Baldwin and Bridge's] Mot. to Dismiss for Lack of Jurisdiction or for Improper Venue, May 4, 2021, ECF No. 56.  On May 21, 2021, Lao PDR moved to amend its complaint to add a new defendant and a new claim, and for leave to file a third amended complaint.  See Third Mot. to Am. Compl., May 21, 2021, ECF No. 59.  Lao PDR also filed opposition to Baldwin and Bridge's motion to dismiss.  See Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction or Improper Venue, May 25, 2021, ECF No. 65.

After the parties fully briefed the Third Mot. to Am. Compl., see Resp. to Pl.'s Third Mot. to Am. Compl., June 9, 2021, ECF No. 69; Decl. of [Baldwin], June 9, 2021, ECF No. 70; Decl. of Taylor Bruun, June 9, 2021, ECF No. 71; Decl. of Caleb Reed, June 8, 2021, ECF No. 72; Decl. of Bradley J. Shaw, June 8, 2021, ECF No, 73; Pl.'s Reply in Supp. of its Third Mot. to Am. Compl., July 6, 2021, ECF No. 82, the Court ordered an emergency hearing on Lao PDR's motion to amend.[3]  See Order, July 6, 2021, ECF No. 83.  The Court conducted that hearing on July 9, 2021, see ECF No. 88, and granted Lao PDR's motion to amend on July 15, 2021.  See Memo. Dec. and Order re: Third Mot. to Am. Compl., July 15, 2021, ECF No. 101 ("TAC Order"); see

---

[3] Lao PDR also filed a motion for a preliminary injunction and temporary restraining order based on the proposed TAC, see Mot. for Temp. Restraining Order and Prelim. Injunction, May 21, 2021, ECF No. 58, which necessitated resolving Lao PDR's Third Motion to Amend on an expedited basis.

**MEMORANDUM DECISION AND ORDER - 6**

also Am. Memo. Dec. and Order re: Third Mot. to Am. Compl., July 16, 2021, ECF No. 103.  Lao PDR's TAC was filed on July 16, 2021.[4]  See TAC.

The Court subsequently denied Baldwin and Bridge's motion to dismiss the Second Amended Complaint as moot.  See Am. Scheduling Order, July 27, 2021, ECF No. 113.  Pursuant to various stipulations and amendments to the Court's scheduling order, the parties briefed new motions to dismiss and for jurisdictional discovery related to the TAC.  See Pl.'s Mot.; Defs. Baldwin and Bridge's Mot. to Dismiss [TAC] for Lack of Personal Jurisdiction or Improper Venue, Aug. 5, 2021, ECF No. 121 ("Mot. to Dismiss TAC"); Def. Br. Mot. to Dismiss TAC; Rev. Pl. Br.; Pl.'s Opp'n to Mot. to Dismiss, Aug. 31, 2021, ECF No. 125; Reply in Supp. of [Mot. to Dismiss TAC], Sept. 15, 2021, ECF No. 126; Def. Br.  The Court conducted oral argument on Pl. Mot. and the Mot. to Dismiss TAC on October 28, 2021 ("Oral Arg.").  See Docket Entry, Oct. 28, 2021, ECF No. 135.

After initially propounding discovery requests to defendants and receiving written objections, Lao PDR revised its requests to three categories broken down into seven separate requests consisting of six document requests and one request for a deposition, which it now asks the Court to order.  See Discovery Demands.  The specific discovery Lao PDR requests in support of its jurisdictional claims are:

A.  Idaho Independent Bank Account Information

> (1) Account statements from January 1, 2012 to December 31, 2019 for all accounts at Idaho Independent Bank owned by Baldwin, Bridge, Sanum, LHNV, or the John K. Baldwin Irrevocable Trust, or for which Baldwin has signing authority, including without limitation

---

[4] The TAC was deemed filed as of May 21, 2021.  See TAC Order at 20.

**MEMORANDUM DECISION AND ORDER - 7**

the accounts identified in ECF No. 31-1 Exs. 3–4 and ECF No. 37-1
Exs. C–J.

(2) All communications between Baldwin and Idaho Independent Bank
from January 1, 2012 to December 31, 2019.

B. Baldwin and Bridge Property in Idaho

(3) Documents sufficient to show all property, tangible or intangible, in
the State of Idaho, in which Baldwin or Bridge has or had any
ownership or other property interest, from January 1, 2017 to the
present (including any interest in an LLC or other entity organized
under the laws of Idaho or with its principal place of business in
Idaho), and any acquisitions or dispositions of such property during
that period.

(4) For any such property that is an interest in an LLC or other entity,
the organizational documents for the entity or other documents
showing the entity's ownership and any changes in ownership during
that period.

(5) The organizational and trust documents for the John K. Baldwin
Irrevocable Trust, including documents sufficient to show the
settlors, beneficiaries, and trustees thereof.

C. Sanum/LHNV Alter Ego Status

(6) Corporate records for Sanum and LHNV, including organizational
documents regardless of the date, as well as corporate resolutions,
board meeting minutes and agendas, financial statements, and tax
returns from January 1, 2012 to the present.

(7) Deposition of non-party Clay Crawford, to be taken once document
production is complete.

Id.

For the reasons set forth below, Lao PDR's motion for jurisdictional discovery

is granted in part and denied in part.

**MEMORANDUM DECISION AND ORDER - 8**

## III.   DISCUSSION

### A. Standard of Review

Ordering—or not ordering—jurisdictional discovery is within the discretion of the Court.  Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).   In the Ninth Circuit, jurisdictional discovery is appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  Laub v. U.S. Dep't of Interior, 342 F. 3d 1080, 1093 (9th Cir. 2003) (quoting Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)).  Courts will deny jurisdictional discovery where the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts" or "based on bare allegations in the face of specific denials."  Boschetto, 539 F.3d at 1020; Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted).  Although not binding on this Court, some district courts in the Ninth Circuit

> have required a plaintiff to establish a "colorable basis" for personal jurisdiction before discovery is ordered.  This 'colorable' showing should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with "some evidence" tending to establish personal jurisdiction over the defendant.

Life Bliss Foundation v. Sun TV Network Limited, No. EDCV 13-00393-VAP, 2013 WL 12132068, at *2 (C.D. Cal. Dec. 13, 2013) (quoting Johnson v. Mitchell, No. CIV. S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) and collecting cases); see also Lone Wolf Distributors, Inc. v. Bravoware, Inc., No. 2:15-cv-00016-BLW, 2016 WL 707359, at *1–2 (D. Idaho Feb. 22, 2016) (allowing discovery because plaintiff had "at least a colorable claim that discovery might yield facts sufficient to establish a prima facie case of personal jurisdiction").

**MEMORANDUM DECISION AND ORDER - 9**

### B. Proposed Discovery in Support of Specific Jurisdiction

Lao PDR asserts that discovery into the first category of discovery, "Idaho Independent Bank Account Information," is appropriate because "it would confirm whether Baldwin and Bridge purposefully used Idaho bank accounts to finance and operate the unlawful gambling ventures in Laos that gave rise to the arbitrations and pay for the arbitrations themselves," and therefore would allegedly establish specific jurisdiction over Baldwin and Bridge. Rev. Pl. Br. at 3. Specifically, Lao PDR contends that the discovery it seeks is narrowly tailored and will reveal connections between Baldwin and Bridge's activities in Idaho and the events underlying the two arbitrations. Id. at 4–6. In support of its argument, Lao PDR points to allegations in the TAC that Baldwin and Bridge used their Idaho bank accounts in connection with Sanum and LHNV's Laotian gambling ventures. Id. at 4–5; see also TAC ¶¶ 33–62. Lao PDR lists several transactions that it argues show a pattern by Baldwin and Bridge of using Idaho bank accounts to conduct business related to Sanum and LHNV's gambling businesses. Rev. Pl. Br. at 5; see also Decl. of David Branson in Supp. of Pl.'s Resp. to [Baldwin's] Mot. to Dismiss, ¶¶ 29–38, Exs. C–J, Oct. 22, 2020, ECF No. 37-1 ("Branson Decl.").

In response, Baldwin and Bridge contend that discovery is not warranted because (i) banking records of non-parties are not relevant to the question of specific jurisdiction over Baldwin and Bridge; (ii) Baldwin and Bridge's Idaho contacts must relate to the Awards, not the issues underlying the arbitrations, so discovery into their Idaho contacts is futile; (iii) even if Lao PDR is correct that the forum contacts need only relate to the issues underlying the arbitrations, Lao PDR still could not

demonstrate specific jurisdiction because it cannot show that its injury—i.e. the costs it incurred defending the arbitrations—are related to Baldwin and Bridge's contacts with Idaho; and (iv) the specific requests LAO PDR propounded are overly broad and unduly burdensome to comply with.  <u>See</u> Def. Br. at 3–6.

Instead of a bright-line rule about whether the relevant forum contacts must relate to the events underlying the arbitration or to the conduct of the arbitration itself that is applicable to arbitral award enforcement actions, the case law demonstrates that courts look to the nexus between a defendant, the forum, and the plaintiff's claim.  <u>Compare</u> Rev. Pl. Br. at 4 (citing <u>Compañia de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.</u>, 970 F.3d 1269, 1287 (10th Cir. 2020); <u>Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114, 1123–24 (9th Cir. 2002)) <u>with</u> Def. Br. at 3–4 (citing <u>Sharp Corp. v. Hisense USA Corp.</u>, 292 F. Supp. 3d 157, 163–64, 171 (D.D.C. Nov. 13, 2017); <u>CRS, LLC v. Bitarts Ltd.</u>, No. 05-0437L, 2005 WL 8172582, at *2 (W.D. Wash. July 26, 2005); <u>CIMSA</u>, 970 F.3d at 1286).  In <u>Sharp</u>, the court analyzed the connection between the defendant's contacts with the forum and the arbitral tribunal's emergency order enjoining the plaintiff from making disparaging remarks about the defendant.  292 F. Supp. 3d at 170–71.  The plaintiff complained that the emergency order allegedly infringed plaintiff's first amendment rights, so the court's analysis necessarily looked to the relationship between the defendant's forum contacts and the emergency order enjoining those rights.  <u>Id.</u>  Likewise, in <u>Glencore Grain</u>, the Ninth Circuit discussed the claims underlying the arbitration because the plaintiff in that

case sought to enforce a final arbitral award for damages against the defendant.  <u>See</u>

<u>Glencore Grain</u>, 284 F.3d at 1123–24.

Lao PDR argues that <u>CIMSA</u> creates a bright-line rule that the appropriate

inquiry is into the nexus to the claims underlying the arbitration.  Rev. Pl. Br. at 4.

In support of that argument, Lao PDR cites the Tenth Circuit's statement in <u>CIMSA</u>

that the

> substantive and procedural features of an action to confirm an
> arbitration award support the conclusion that the proper jurisdictional
> inquiry is whether the beneficiary of an award can show he or she
> sustained an injury caused by the defendant's forum activities in
> connection with the claim that led to the arbitration, as opposed to an
> injury caused by the defendant's forum activities in connection with the
> arbitration proceeding itself.

970 F.3d at 1287; <u>see also</u> Rev. Pl. Br. at 4.  Thus, according to Lao PDR, the Tenth

Circuit held that specific jurisdiction exists as long as defendant's forum contacts

relate to the events underlying the arbitration.

However, the <u>CIMSA</u> court also set forth the constitutional analysis when

specific jurisdiction is contested.

> Consistent with the Due Process Clause, a court may exercise specific
> personal jurisdiction only if the litigation results from alleged <u>injuries</u>
> that arise out of or relate to activities by the defendant which were
> purposefully directed at the forum.  In a case like this one, this guidance
> makes more sense—and perhaps only makes sense—if applied with an
> eye toward the underlying dispute.

970 F.3d at 1286 (emphasis in original) (internal quotation marks and citations

omitted).  Thus, the language Lao PDR relies on, which relates specifically to

jurisdictional features of the New York Convention, must be read together with the

Tenth Circuit's construction of the proper constitutional inquiry that a court must

make to satisfy due process. Therefore, the Tenth Circuit held that in a typical enforcement action (i.e., one in which an arbitral claimant seeks to enforce an award of damages against an arbitral respondent), the injury in question occurred prior to the arbitral proceedings and so the relevant constitutional inquiry is whether the defendant's forum contacts relate to the underlying claims in the arbitration. <u>Id.</u> at 1286–87. <u>CIMSA</u> does not address the specific jurisdictional analysis in contexts other than the typical enforcement action, such as the one presented here, except to the extent that it held that the constitutional framework remains the same. <u>Id.</u> at 1286. Thus, <u>CIMSA</u>, <u>Sharp</u>, and <u>Glencore Grain</u> all look at the relationship between the plaintiff's claim and the defendant's forum contacts.

Given that the Court finds no real conflict in the authorities cited by the parties, the proper inquiry is whether a sufficient nexus exists between the forum, the defendant, and the plaintiff's cause of action. In this case, Lao PDR's claim is to enforce two arbitral Awards for the costs, fees, and expenses it incurred in defending the arbitrations commenced by Sanum and LHNV. <u>See</u> TAC ¶¶ 119–20. The arbitral tribunals each found that Lao PDR had a complete defense to the claims asserted by Sanum and LHNV, respectively, and, pursuant to the procedures agreed to by the parties to the arbitrations, the tribunals awarded Lao PDR costs, fees, and expenses for having to defend against Sanum's and LHNV's unsuccessful claims. <u>See</u> TAC Ex C ¶¶ 281–94, Ex. D ¶¶ 251–66.

Although the Awards are not for damages based on Lao PDR's affirmative claims during the arbitrations, Lao PDR demonstrated a sufficient connection between the Awards and the claims underlying the arbitrations for the purposes of

**MEMORANDUM DECISION AND ORDER - 13**

this motion in that Lao PDR was awarded its costs, fees, and expenses based on the merits of its defenses.[5]  Moreover, Lao PDR has submitted sufficient evidence to make its allegations regarding the nexus between Baldwin, Bridge, Idaho, and Lao PDR's claim to enforce the Awards more than a hunch.  Lao PDR proffered evidence of contacts with Idaho that relate to the conduct of the arbitrations themselves.  Lao PDR submitted an email confirmation of an outgoing wire transfer of $200,000 that was sent from a Bridge account in Idaho to the International Bank for Reconstruction in connection with the LHNV arbitration.  See Branson Decl. ¶ 37, Ex. I.  Moreover, Lao PDR alleges that Baldwin used an Idaho bank account to bribe a potential witness to not testify in the arbitral proceedings.  See TAC ¶ 54.  Although the specific allegation that Baldwin's Idaho account was used to pay the bribe is made on information and belief, the fact that the arbitral tribunals found that such a bribe was paid supports the allegation as more than hunch.  See TAC Ex. C ¶¶ 154–62, Ex. D ¶¶ 153–61.  Additionally, Lao PDR submitted evidence of a number of financial transactions linking Idaho to Baldwin and Bridge's activities in Laos.  See Branson Decl. ¶¶ 29–38, Exs. C–J.  Although some of these transactions involve non-parties rather than Baldwin or Bridge, Lao PDR has done enough at this stage to warrant

---

[5] Given that Lao PDR's claim is to enforce Awards for costs, fees, and expenses incurred during the arbitrations themselves, the Court is mindful of the analysis set forth in Sharp.  In Sharp, plaintiff sought to set aside an emergency award issued by the tribunal.  Sharp, 292 F. Supp. 3d at 163-64.  In assessing jurisdiction, the court refused to consider contacts relating to the underlying dispute because the "grievances are grounded in the emergency order itself."  292 F. Supp. 3d at 171.  Here, unlike the emergency award in Sharp, which was an interim measure put in place during the pendency of the merits proceedings, the Awards reflect Lao PDR's success on the merits of its defenses.

**MEMORANDUM DECISION AND ORDER - 14**

limited discovery into Baldwin's and Bridge's contacts with Idaho and how those contacts relate to the Awards.

However, the Court agrees with Baldwin and Bridge that Lao PDR's first category of requested discovery is overbroad. Lao PDR seeks eight years of account statements for "all accounts at Idaho Independent Bank owned by Baldwin, Bridge, Sanum, [LHNV], or the John K. Baldwin Irrevocable Trust, or for which Baldwin has signing authority."[6] Discovery Demands at 1. The Court remains unpersuaded that non-parties' activities in the forum have any bearing on the Court's jurisdiction over Baldwin and Bridge.[7] Jurisdictional discovery into the John K. Baldwin Irrevocable Trust (the "JKB Trust") is particularly unwarranted, as there is not even an allegation that the JKB Trust is Baldwin's alter ego. Moreover, as discussed below,

---

[6] For the purposes of this motion, Lao PDR need not make a prima facie showing of specific jurisdiction over Baldwin and Bridge. Lao PDR has met its lesser burden to show "a colorable basis" of personal jurisdiction based on Baldwin and Bridge's contacts with Idaho related to both the conduct of the arbitrations and the claims underlying the arbitrations. See Lone Wolf, 2016 WL 707359, at *1. Therefore, the requested time period is not overbroad. See Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction").

[7] Lao PDR contended at oral argument that Baldwin's activities as a corporate officer, director, or trustee of various non-party entities could be imputed to Baldwin personally for the purposes of specific jurisdiction without a finding that Baldwin and those entities are alter egos. Oral Arg. at 23:24–25:30. Lao PDR's contention is incorrect. See In re Boon Global Ltd., 923 F.3d 643, 651 (9th Cir. 2019) (other than alter ego status and individual torts, corporate form generally shields officers from jurisdiction where the only contacts are with regard to performance of official duties).

**MEMORANDUM DECISION AND ORDER - 15**

the Court must have jurisdiction over Baldwin in order to reach the substantive question of which, if any, of his companies are merely his alter egos.[8]

Therefore, the Court will limit Lao PDR's inquiry to accounts owned by Baldwin and/or Bridge. Lao PDR's request for account statements for accounts owned by Sanum, LHNV, the John K. Baldwin Irrevocable Trust, and any account for which Baldwin has signing authority is denied to the extent that such accounts are not or were not also owned by Baldwin and/or Bridge during the relevant time period. Moreover, Lao PDR is not entitled to Baldwin and Bridge's unredacted account statements. Baldwin and Bridge shall produce redacted statements showing only information that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations. Likewise, Lao PDR's request for communications between Baldwin and Idaho Independent Bank from January 1, 2012 to December 31, 2019 is limited to communications that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations.[9]

---

[8] Ranza v. Nike, Inc., relied on by Lao PDR in support of its argument that the Court can use alter ego liability to find personal jurisdiction over a defendant, is inapposite. See 793 F.3d 1059 (9th Cir. 2015). In that case, the Ninth Circuit found that it could not exercise jurisdiction over Nike's subsidiary despite numerous contacts with the forum. Id. at 1069–70. Moreover, there was no dispute over the district court's jurisdiction over Nike, which the plaintiff attempted to use to gain jurisdiction over the subsidiary. Here, in contrast, it is unclear whether the Court has jurisdiction over Baldwin, Bridge, Sanum, or LHNV, the latter two of which are not even parties.

[9] Although the Court is not obligated to rewrite overly broad discovery requests, see In re Pioneer Corp., No. cv-18-4524, 2018 WL 4963126, at *6 (C.D. Cal. Aug. 27, 2018) (collecting cases), the Court has broad discretion to manage discovery, including to narrow such requests. Id. at *6–7.

**MEMORANDUM DECISION AND ORDER - 16**

### C.  Proposed Discovery in Support of <u>Quasi in Rem</u> Jurisdiction

Lao PDR requests the second category of discovery, "Baldwin and Bridge Property in Idaho," in support of its theory that the Court can exercise <u>quasi in rem</u> jurisdiction over Baldwin and Bridge.  Rev. Pl. Br. at 6–7.  Lao PDR relies on an exception to the general prohibition against <u>quasi in rem</u> jurisdiction, set forth in <u>Shaffer v. Heitner</u>, that "[o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff," the creditor is permitted "to realize on that debt in a State where the defendant has property."  433 U.S. 186, 210 n.36 (1977).  Although Lao PDR correctly notes that this exception also applies to the enforcement of arbitral awards, <u>see</u> <u>Glencore Grain</u>, 284 F.3d at 1127, Lao PDR does not have an arbitral award against Baldwin or Bridge.  <u>See</u> TAC Exs. C and D. The Awards are against Sanum and LHNV, respectively, and no court or arbitral tribunal has determined that Baldwin or Bridge is a debtor to Lao PDR with respect to the Awards.  <u>See</u> TAC ¶¶ 11–13.  Indeed, whether Baldwin or Bridge is a debtor to Lao PDR is exactly the determination that Lao PDR is asking this Court to make. However, Lao PDR cannot put the cart before the horse: The Court must have jurisdiction over Baldwin and Bridge before it can make any substantive determinations regarding alter ego status.[10]  <u>See</u> <u>Glencore Grain</u>, 284 F.3d at 1127

---

[10] As discussed below, Lao PDR's construction of alter ego liability as a jurisdictional question is not persuasive in this case.  Although the Ninth Circuit has held that alter ego status can be used to extend jurisdiction over a party that would otherwise not be subject to jurisdiction, <u>see</u> <u>Ranza</u>, 793 F.3d at 1071, Lao PDR asks the Court to engage in a substantive alter ego analysis prior to determining that it has jurisdiction over any of the alleged alter egos.  <u>See</u> Rev. Pl. Br.  Without pre-existing jurisdiction over at least one of the alleged alter egos, the Court cannot analyze the alter ego question.

**MEMORANDUM DECISION AND ORDER - 17**

(quasi in rem jurisdiction available only after "it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff" (quoting Shaffer, 433 U.S. at 210 n.36)). For the reasons set forth more fully below, the Court cannot determine alter ego status without first determining that it has jurisdiction over at least one of the alleged alter egos.

Because Lao PDR has not satisfied the first requirement of quasi in rem jurisdiction that a court of competent jurisdiction has determined that Baldwin and Bridge are Lao PDR's debtors, the Court finds that any further discovery into Baldwin and Bridge's assets in Idaho would not be relevant to the Court's jurisdictional analysis. The motion for jurisdictional discovery is denied with respect to the second category of discovery.

### D. Proposed Discovery in Support of Lao PDR's Alter Ego Theory

Finally, Lao PDR requests extensive discovery into non-parties Sanum and LHNV in support of Lao PDR's claim that Baldwin is the alter ego of each of those entities. Rev. Pl. Br. at 8. Lao PDR relies primarily on Ranza and a District of Oregon case involving a default judgment proceeding. See Rev. Pl. Br. at 8–9 (citing, inter alia, Ranza, 793 F.3d at 1073; Bunge S.A. v. Pac. Gulf Shipping (Sing.) Pte. Ltd., No. 3:19-cv-00491, 2020 WL 1528250, at *2–3 (D. Or. March 31, 2020).[11] In opposition, Baldwin and Bridge cite another District of Oregon case for the position that a court

---

[11] CBF Indústrua de Gusa S/A v. AMCI Holdings, Inc. is inapposite because personal jurisdiction was not an issue before that court. 850 F.3d 58, 73 (2d Cir. 2017). The other case cited by Lao PDR is distinguishable for the same reason as Ranza, namely that the court already possessed undisputed jurisdiction over one of the alter egos prior to analyzing the alter ego question. See Crystalles Int'l Corp. v. Bolivarian Republic of Venezuela, 932 F.3d 126, 138 (3d Cir. 2019).

**MEMORANDUM DECISION AND ORDER - 18**

cannot engage in an alter ego analysis prior to determining that it has jurisdiction. See Def. Br. at 7 (citing Cerner Middle E. Ltd. v. iCapital, LLC, No. 3:16-CV-01631, 2017 WL 2579292, at *2 (D. Or. June 14, 2017), rev'd and remanded on other grounds, 939 F.3d 1016 (9ᵗʰ Cir. 2019).

In Bunge, the District of Oregon held that the plaintiff had met its burden of establishing a prima facie case that it was entitled to a default judgment, including that the court had personal jurisdiction over the non-answering defendants. Bunge, 2020 WL 1528250, at *2–3. The plaintiff in Bunge commenced the action against an arbitral award debtor and the debtor's alleged alter ego seeking to enforce the award against the alleged alter ego's property within the district. Id. at *1.

Although the basic facts in Bunge appear to be similar to this case, the procedural posture is completely different. In Bunge, the District Court analyzed a magistrate's report that had determined that a default judgment was warranted. Id. Despite the magistrate finding that the two defendants were alter egos, the magistrate did not determine whether the court had personal jurisdiction. Id. at *2. Thus, the District Court analyzed whether it had jurisdiction over the claims. Id. The Bunge court relied exclusively on Ranza in support of its finding that "alter egos may be analyzed as if they were a single entity." Id. The court thus found, "For the reasons set forth in the [magistrate's report], the Court concludes that [the defendants] are alter-ego entities, and therefore, the London tribunal had jurisdiction to issue its judgment." Id. Given this finding, the court held that it was appropriate to exercise quasi in rem jurisdiction over the defendants based on the alter ego's property within the district. Id. at *2–3.

**MEMORANDUM DECISION AND ORDER - 19**

However, it does not appear that the <u>Bunge</u> court analyzed the question of whether it had jurisdiction to make the alter ego finding.  In <u>Ranza</u>, the only case on which the <u>Bunge</u> court relied, there was no question that the court had jurisdiction over the parent company, Nike.  <u>Ranza</u>, 793 F.3d at 1071 (describing Nike as a "local parent").  Therefore, the <u>Ranza</u> court did not have to undertake an alter ego analysis as a pre-requisite to finding jurisdiction; rather, it had jurisdiction over Nike and merely investigated if that jurisdiction could be extended to Nike's subsidiary by finding the subsidiary and Nike were effectively one and the same.  <u>Id.</u>

Here, on the other hand, the Court does not have jurisdiction over the award debtors, Sanum and LHNV, as those entities are not parties to this suit.  Even if Lao PDR had joined Sanum and LHNV, it is unclear based on the record before the Court if Sanum or LHNV have any property in, or sufficient contacts with, Idaho.  Thus, the Court would need to determine its jurisdiction over Sanum and LHNV prior to reaching any alter ego analysis.  <u>See</u> <u>Glencore Grain</u>, 284 F.3d at 1122 ("In suits to confirm a foreign arbitral award under the Convention, due process requires that the district court have jurisdiction over the defendant"); <u>see also</u> <u>Ranza</u>, 793 F.3d at 1071 ("Ranza seeks to impute local parent's contacts to a foreign subsidiary . . . whereas the alter ego test has traditionally been used to bring a controlling parent into a controlled subsidiary's home forum, Ranza attempts to use the test to bring a controlled subsidiary into the controlling parent's home forum").  Here, neither Baldwin, Bridge, Sanum, nor LHNV are subject to general jurisdiction, as Nike was in Oregon, so the Court would need to find jurisdiction over at least one of those entities prior to analyzing Lao PDR's alter ego claim.

**MEMORANDUM DECISION AND ORDER - 20**

Glencore Grain is instructive here: The Ninth Circuit held that quasi in rem jurisdiction is appropriate only after "it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff."   Glencore Grain, 284 F.3d at 1127 (quoting Shaffer, 433 U.S. at 210 n.36).   Although an arbitral tribunal has determined that Sanum and LHNV are debtors of Lao PDR, no court of competent jurisdiction has determined that Baldwin and Bridge are debtors of Lao PDR.   This Court cannot make that determination without first having personal jurisdiction over Baldwin and Bridge.  Id.; see also Cerner, 2017 WL 2579292, at *2 (finding that court did not have jurisdiction to determine whether individual defendant was alter ego of award debtor because he was not a signatory to the arbitral contract and no court of competent jurisdiction had determined that he was subject to the award).[12]

Because the Court must have personal jurisdiction over Baldwin and Bridge before it can undertake an analysis of whether they are alter egos of Sanum and LHNV, and there is no allegation that the Court already possesses jurisdiction over Sanum or LHNV, discovery into Sanum and LHNV's corporate histories and their relationships with Baldwin and Bridge would not aid the Court in determining its

---

[12] The problem with Lao PDR's position becomes clear when considering the possibility that the Court analyzes the alter ego question prior to determining jurisdiction over at least one of the alleged alter egos and finds Sanum and LHNV to not be Baldwin's or Bridge's alter egos.  In that case, the Court would not have jurisdiction over any of the alleged alter egos, yet the Court would have made a critical substantive finding, a finding that could have ramifications on Lao PDR's ability to enforce the Awards, without any jurisdiction to have made such a finding.

MEMORANDUM DECISION AND ORDER - 21

jurisdiction over Baldwin and Bridge.  Lao PDR's motion for jurisdictional discovery is denied with respect to the third category of discovery.[13]

## IV.   CONCLUSION

For the foregoing reasons, Lao PDR's motion for jurisdictional discovery is granted in part and denied in part, and it is

**ORDERED** that Lao PDR's motion is granted in part and denied in part; and it is further

**ORDERED** that within 30 days from the date this Memorandum Decision and Order is filed, Baldwin and Bridge shall produce all account statements from January 1, 2012 through December 31, 2019 for any account at Idaho Independent Bank that either Baldwin or Bridge owns, owned, or partially owns or owned during that period. Such statements shall be redacted to include only information that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations; and it is further

**ORDERED** that within 30 days from the date this Memorandum Decision and Order is filed, Baldwin and Bridge shall produce communications between Baldwin and Idaho Independent Bank from January 1, 2012 to December 31, 2019 that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations; and it is further

---

[13] The Court's denial of any discovery related to Sanum and LHNV allegedly being Baldwin's alter egos includes Lao PDR's request to take the deposition of Clay Crawford.

**MEMORANDUM DECISION AND ORDER - 22**

**ORDERED** that Lao PDR's motion for jurisdictional discovery is otherwise DENIED without prejudice to renew if this case proceeds past the pending Motion to Dismiss TAC; and it is further

**ORDERED** that the parties shall confer and submit a proposed schedule for supplemental briefing of Baldwin and Bridge's pending Motion to Dismiss TAC with respect to any new factual allegations and/or legal arguments based on the discovery that will be conducted pursuant to this Order.

 /s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:          November 19, 2021

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION AND ORDER - 23**