## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC, | Case No.: 2:20-cv-00195-CRK |
| **Plaintiff,** | |
| v. | **MEMORANDUM DECISION AND ORDER RE: FOURTH MOTION TO AMEND COMPLAINT** |
| JOHN K. BALDWIN; BRIDGE CAPITAL, LLC; COLEMAN, LLC; and CAMPBELL HOLDINGS, LLC, | |
| **Defendants.** | |

## INTRODUCTION

Before the Court is the Government of the Lao People's Democratic Republic's ("Lao PDR") fourth motion to amend the Complaint, Pl.'s Fourth Mot. Amend Compl., Mar. 14, 2022, ECF No. 141 ("Fourth Mot. to Amend"), and accompanying memorandum in support of its motion. Memo. in Supp. of Pl.'s Fourth Mot. Amend Compl., Mar. 14, 2022, ECF No. 141-1 ("Pl. Br."). Lao PDR argues that the Court should allow Lao PDR to amend its complaint to add Sanum Investments Ltd. ("Sanum") and Lao Holdings N.V. ("LHNV") as defendants in the action based on evidence discovered during jurisdictional discovery relating to defendants John K. Baldwin ("Baldwin") and Bridge Capital, LLC ("Bridge-CNMI") (Baldwin and Bridge-CNMI are referred to collectively as "Defendants"). Pl. Br. at 8. Lao PDR asserts that newly discovered bank transactions showing accounts owned by Sanum and Bridge-CNMI were used to pay for arbitration expenses and transfer profits from

**MEMORANDUM DECISION AND ORDER - 1**

Sanum's Laotian gambling ventures to Bridge-CNMI, form the basis for specific personal jurisdiction over Sanum and LHNV. [Proposed] Fourth Am. Compl. to Enforce Foreign Arbitration Awards ¶¶ 18–38, Mar. 14, 2022, ECF No. 141 ("PFAC"); Pl. Br. at 9–14. According to Lao PDR, Sanum purposely availed itself of the Idaho banking system and Bridge-CNMI paid arbitration expenses on behalf of Sanum and LHNV at the direction of Sanum, LHNV, or Baldwin. PFAC ¶ 35; Pl. Br. at 9–14. Defendants object to the amendment on the grounds that (1) the amendment is futile because the evidence relied upon does not support a finding of specific jurisdiction over Sanum or LHNV and (2) allowing the amendment is prejudicial to Defendants.[1] Defs.' Resp. Opp. [Fourth Mot. Amend] [Dkt. 141], 5–20, Apr. 15, 2022, ECF No. 147 ("Defs. Br."). Lao PDR replies that its motion to amend the complaint should be granted because the deliberate and repeated use of the Idaho banking system is sufficient to support a finding of specific jurisdiction, the exercise of specific jurisdiction is reasonable, and the amendment is not prejudicial. Pl.'s Reply in Supp. of [Fourth Mot. to Amend], 2–10, Apr. 29, 2022, ECF No. 148 ("Pl. Reply"). For the following reasons, Lao PDR's Fourth Motion to Amend is denied.

---

[1] Baldwin, Bridge-Nevada, and Bridge-CNMI have moved to dismiss each of the complaints and amended complaints filed in this case. See, e.g., ECF Nos. 21, 34, 56, 57, 121 (mots. to dismiss), 33, 69, 147 (opp'n to amendment). Presently pending before the Court is a motion to dismiss the Third Amended Complaint for lack of personal jurisdiction over Baldwin and Bridge-CNMI. Defs. Baldwin and Bridge's Mot. to Dismiss Third Am. Compl. [Dkt. 108] for Lack of Personal Jurisdiction or Improper Venue, Aug. 5, 2021, ECF No. 121. As part of the Third Amended Complaint, Lao PDR claims that Baldwin and Bridge-CNMI are the alter egos of LHNV and Sanum. Third Am. Compl. to Enforce Arbitration Awards ¶ 4, July 16, 2021, ECF No. 108 ("TAC").

**MEMORANDUM DECISION AND ORDER - 2**

# BACKGROUND

### a.   Factual Background[2]

The parties to this action have a long history related to gambling ventures in the Lao People's Democratic Republic ("Laos"). See generally, PFAC ¶¶ 99–145. The Court now recounts only the history pertinent to the Fourth Motion to Amend. Sanum was incorporated in Macau SAR in 2005. Id. ¶ 12. LHNV is an Aruban corporation that wholly owns Sanum. Id. ¶ 13. Sanum, Lao PDR, and Laotian entity ST Group opened and operated the Savan Vegas Casino in Laos.[3] Id. ¶¶ 100–01; TAC Ex. D ¶¶ 1–2. In 2012, Lao PDR initiated an audit of Savan Vegas Casino's books and records. PFAC ¶ 101.

On August 14, 2012, Sanum and LHNV each filed bilateral investment treaty ("BIT") claims against Lao PDR alleging "violations of [Lao PDR's] international responsibilities to protect foreign investors," including expropriations of several gaming licenses and unfair and inequitable treatment involving Sanum's and

---

[2] The facts set forth in the factual background section are taken from Lao PDR's Proposed Fourth Amended Complaint and are assumed to be true for the purposes of this motion. See generally, PFAC.

[3] Sanum also entered into agreements with Laotian entity ST Group to partner in several gambling ventures and obtained a contractual interest in Thanaleng Slot Club, a Laotian slot club controlled by ST Group. PFAC ¶¶ 73, 100, 103, 217. These gambling ventures are central to Sanum's and LHNV's claims in the arbitrations underlying this enforcement action. PFAC ¶¶ 111–13; TAC Ex. C ¶¶ 1–5; TAC Ex. D ¶¶ 1–3 ("the Final Sanum Award" and the "Final LHNV Award," collectively, the "Final Awards").

**MEMORANDUM DECISION AND ORDER - 3**

LHNV's investments.[4]  Id. ¶¶ 104, 110–13.  In June 2014, Lao PDR, LHNV, and Sanum reached a settlement agreement (the "Deed of Settlement"), pursuant to which LHNV and Sanum agreed, inter alia, to dismiss all BIT claims against Lao PDR, sell the Savan Vegas Casino within ten months, and exit Laos.  Id. ¶¶ 115–16. Sanum also agreed that if it did not sell the Savan Vegas Casino within the agreed upon timeframe, Lao PDR would take possession of, and sell, Savan Vegas Casino, and distribute the profits from the sale in accordance with Savan Vegas Casino's ownership interests.  Id. ¶ 117.  Sanum further agreed to allow a government monitor

---

[4] Sanum initiated an ad hoc arbitration at the Permanent Court of Arbitration ("PCA") pursuant to Article 8(3) of the Agreement Concerning the Encouragement and Reciprocal Protection of Investments between the Government of the People's Republic of China and the Government of the Lao People's Democratic Republic ("China-Lao BIT") governed by United Nations Commission on International Trade Law Rules (the "2012 Sanum Arbitration").  PFAC ¶ 108; see also [Sanum] v. [Lao PDR], PCA Case No. 2013-13; Agreement between the Gov't of the People's Republic of China and the Gov't of the Lao People's Democratic Republic Concerning the Encouragement and Reciprocal Protection of Investments, China-Laos, Jan. 31, 1993, available at https://investmentpolicy.unctad.org/international-investment-agreements/treaty-files/753/download. (last accessed June 7, 2022).  LHNV initiated arbitration at the International Centre for Settlement of Investment Disputes ("ICSID") pursuant to Articles 9 and 13 of the Agreement on Encouragement and Reciprocal Protection of Investments between the Lao People's Democratic Republic and the Kingdom of the Netherlands ("Lao-Dutch BIT") governed by ICSID Additional Facility Rules (the "2012 LHNV Arbitration") (the 2012 Sanum Arbitration and the 2012 LHNV Arbitration are collectively referred to as the "2012 BIT Arbitrations").  PFAC ¶ 106; see also [LHNV] v. [Lao PDR], ICSID Case No. ARB(AF)/12/6; Agreement on Encouragement and Reciprocal Protection of Investments between the Lao People's Democratic Republic and the Kingdom of the Netherlands, Neth.-Laos, May 16, 2003, available at https://investmentpolicy.unctad.org/international-investment-agreements/treaty-files/1866/download. (last accessed June 7, 2022).  LHNV claimed that as the owner of Sanum, Lao PDR's unfair and inequitable treatment of Sanum extended to LHNV. See PFAC ¶ 112.

**MEMORANDUM DECISION AND ORDER - 4**

to review all transactions during the sale period, and to pay taxes on gross gaming revenue in an amount determined by an independent committee.  Id. ¶ 118.

Subsequently, Sanum, LHNV, and Lao PDR each breached the Deed of Settlement.[5]  See id. ¶¶ 100, 117–121, 124. 127.  In light of Lao PDR's breach of the Deed of Settlement, the tribunals in the 2012 BIT Arbitrations allowed Sanum and LHNV to reinstate their BIT claims.[6]  Id. ¶¶ 127–28 (these revived arbitral proceedings are referred to as the "2017 Sanum Arbitration" and the "2017 LHNV Arbitration," or collectively as the "2017 BIT Arbitrations").  The final merits hearing for the 2017 BIT Arbitrations took place in September 2018 and the final awards were entered and finalized on August 6, 2019.  Id. ¶¶ 132–34; see also the Final Awards.

The Final LHNV Award held that LHNV acted in bad faith in its dealings with Lao PDR and was not entitled to protection under the Lao-Dutch BIT and dismissed LHNV's claim because it failed to meet the burden of proof for its claims.  PFAC ¶¶ 138–40; see also Final LHNV Award ¶¶ 206, 293.  The Final LHNV Award awarded

---

[5] In August 2014, Lao PDR initiated commercial arbitration to compel performance of the Deed of Settlement at the Singapore International Arbitration Centre (the "SIAC Arbitration").  Id. ¶¶ 121–126.  The tribunal in the SIAC Arbitration found that Sanum had breached the Deed of Settlement by not having Savan Vegas Casino pay taxes to Lao PDR during the 10-month sale period.  Id. ¶ 124.  The tribunals in the 2012 BIT Arbitrations found that Lao PDR breached the Deed of Settlement by imposing taxes on the sale of Savan Vegas Casino that were not agreed to by the parties to the Deed of Settlement, inter alia.  Id. ¶¶ 127–28.  Plaintiff alleges that Baldwin breached the Deed of Settlement.  Id. ¶¶ 117–20.  However, the PFAC does not allege that Baldwin is a party to the Deed of Settlement, but rather that LHNV and Sanum entered into the Deed of Settlement.  Id. ¶ 115.  Therefore, the Court reads the allegations that Baldwin breached the Deed of Settlement as alleging that LHNV and Sanum breached the Deed of Settlement.
[6] The tribunals for the 2017 BIT Arbitrations sat together and heard arguments on procedural issues, issuing several procedural orders.  Id. ¶ 130.

**MEMORANDUM DECISION AND ORDER - 5**

Lao PDR expenses, fees, and costs of the arbitration in the amount of $1,949,106.67.

PFAC ¶¶ 141–42; see also Final LHNV Award ¶ 294.  The Final Sanum Award held

that Sanum acted in bad faith in its dealings with Lao PDR and was not entitled to

protection under the China-Lao BIT and dismissed Sanum's claim because it failed

to meet the burden of proof for its claims.  PFAC ¶¶ 138–40; see also Final Sanum

Award ¶ 264.  The Final Sanum Award awarded Lao PDR expenses, fees, and costs

of the arbitration in the amount of $1,778,252.31.[7]  PFAC ¶¶ 141–42, Prayer for

Relief; see also Final Sanum Award ¶¶ 265–66.  In this enforcement action, Lao PDR

seeks to recover arbitration-related expenses, fees, and costs awarded by the Final

Awards in the total amount of $3,727,358.98.  See PFAC ¶ 142, Prayer for Relief;

Final Sanum Award ¶¶ 265–66; Final LHNV Award ¶ 294.

**b.    Procedural Background**

The procedural history for this case is lengthy and complex.  Lao PDR initially

commenced its action to enforce the Final Awards by filing a Complaint on April 21,

2020.  Compl. to Enforce Arbitral Awards, Apr. 21, 2020, ECF No. 1.  Lao PDR's initial

Complaint alleged a single cause of action, to enforce the Final Awards against

Baldwin and Bridge Capital, LLC, a Nevada Limited Liability Company ("Bridge-

Nevada"),[8] alleging they are the alter egos of arbitral debtors Sanum and LHNV.  Id.

---

[7] The PFAC states that the Final Sanum Award awarded Lao PDR $1,778,252.21;
however, the Final Sanum Award awards Lao PDR $1,778,252.31.  Compare id. ¶ 142
with Final Sanum Award ¶ 265–66.

[8] The Amended Complaint again named Bridge-Nevada, see Am. Compl. to Enforce
Foreign Arbitration Awards ¶ 4, Aug. 21, 2020, ECF No. 26, but also added the correct
defendant, "Bridge Capital, LLC," a Commonwealth of the Northern Mariana Islands
("CNMI") limited liability company.  Id.  Lao PDR's Second Amended Complaint

¶¶ 4, 7, 148–62.  On July 16, 2020, Bridge-Nevada filed a motion to dismiss the Complaint for lack of personal jurisdiction, claiming that Lao PDR named and served the incorrect "Bridge Capital, LLC."  <u>See</u> Def. [Bridge-Nevada's] Mot. to Dismiss, July 16, 2020, ECF No. 21 ("First Mot. to Dismiss").  Lao PDR moved to amend the Complaint to include the correct "Bridge Capital, LLC," Bridge-CNMI.  Mot. to Amend Compl., Aug. 31, 2020, ECF No. 26.  Lao PDR also filed an opposition to the First Mot. to Dismiss on the grounds that it was entitled to jurisdictional discovery, and moved for jurisdictional discovery.  <u>See</u> Mot. to Conduct Jurisdictional Disc., Aug. 31, 2020, ECF No. 27; Pl.'s Resp. to [Bridge-Nevada's] Mot. to Dismiss, Aug. 31, 2020, ECF No. 28.  Bridge-Nevada opposed Lao PDR's motions to amend the complaint and for jurisdictional discovery.  <u>See</u> Resp. to Pl.'s Mot. to Conduct Jurisdictional Disc., Sept. 21, 2020, ECF No. 32; Resp. to Pl.'s Mot. to Amend Compl., Sept. 21, 2020, ECF No. 33; <u>see also</u> Reply in Supp. of [Bridge-Nevada's] Mot. to Dismiss, Sept. 21, 2020, ECF No. 31.

On October 1, 2020, Baldwin moved to dismiss the Complaint for lack of personal jurisdiction.  <u>See</u> [Baldwin's] Mot. to Dismiss, Oct. 1, 2020, ECF No. 34.  All pending motions were fully briefed by December 11, 2020.  <u>See</u> Pl.'s Resp. to [Baldwin's] Mot. to Dismiss [Dkt. 34]; Pl.'s Reply in Supp. of Mot. to Am. Compl. [Dkt. 26]; Pl.'s Reply in Supp. of Mot. to Conduct Jurisdictional Disc. [Dkt. 27], Oct. 22, 2020, ECF No. 37; Reply in Supp. of [Baldwin's] Mot. to Dismiss [Dkt. 34], Dec. 11,

_____

dropped any claim against Bridge-Nevada.   Second Am. Compl. to Enforce Arbitration Awards, Mar. 19, 2021, ECF No. 52.

**MEMORANDUM DECISION AND ORDER - 7**

2020, ECF No. 41.  The Court held oral argument on the motions on March 15, 2021.
See Order, Dec. 18, 2020, ECF No. 42; Ltr. Re Oral Arg. Questions, Feb. 19, 2021,
ECF No. 43; Am. Order, Mar. 2, 2021, ECF No. 44; Oral Arg., Mar. 15, 2021, ECF No.
46.

On March 5, 2021, Lao PDR filed a second motion to amend its Complaint to
(1) include a cause of action under the Uniform Voidable Transactions Act; (2) add
Coleman, LLC as a defendant; and (3) add additional allegations in support of its
argument that the Court has personal jurisdiction over the defendants.  See Second
Mot. to Amend Compl., Mar. 5, 2021, ECF No. 45.  Following the March 15 oral
argument, the parties stipulated to a schedule pursuant to which Lao PDR would file
its Second Proposed Amended Complaint and the parties would brief their renewed
motions to dismiss and for jurisdictional discovery.[9]  See Stipulation, Mar. 18, 2021,
ECF No. 49; see also Scheduling Order, Mar. 18, 2021, ECF No. 50.

On May 21, 2021, Lao PDR filed its third motion to amend its Complaint,
seeking to add Campbell Holdings, LLC as a new defendant.  Third Mot. to Amend
Compl., May 21, 2021, ECF No. 59.  Lao PDR also filed a motion for a preliminary
injunction and temporary restraining order based on the Proposed Third Amended

---

[9] On March 19, 2021, the Court granted Lao PDR's unopposed second motion to
amend its complaint after counsel for Baldwin and Bridge-CNMI expressed a
willingness to consent to the amendment during the March 15 oral argument.  See
Stipulation Re: Scheduling Deadlines, Mar. 18, 2021, ECF No. 49; Second Am.
Compl., Mar. 19, 2021, ECF No. 52; Order, Mar. 19, 2021, ECF No. 53; see also Memo.
Decision and Order Re: Third Mot. Amend Compl. at 4, July 15, 2021, ECF No. 101.
Subsequently, Baldwin and Bridge-CNMI filed a new motion to dismiss for lack of
personal jurisdiction.  See [Baldwin and Bridge-CNMI's] Mot. to Dismiss for Lack of
Jurisdiction or for Improper Venue, May 4, 2021, ECF No. 56.

**MEMORANDUM DECISION AND ORDER - 8**

Complaint, and its opposition to Baldwin's and Bridge-CNMI's motion to dismiss.  Id.; Mot. for Temp. Restraining Order and Prelim. Injunction, May 21, 2021, ECF No. 58; Pl.'s Resp. to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction or Improper Venue, May 25, 2021, ECF No. 65.

The parties briefed the third motion to amend the Complaint and the Court conducted an emergency hearing on the motion on July 9, 2021.[10]  Resp. to Pl.'s Third Mot. to Amend Compl., June 9, 2021, ECF No. 69; Decl. of [Baldwin], June 9, 2021, ECF No. 70; Decl. of Taylor Bruun, June 9, 2021, ECF No. 71; Decl. of Caleb Reed, June 8, 2021, ECF No. 72; Decl. of Bradley J. Shaw, June 8, 2021, ECF No. 73; Pl.'s Reply in Supp. of its Third Mot. to Amend Compl., July 6, 2021, ECF No. 82; Order, July 6, 2021, ECF No. 83; Oral Arg., July 9, 2021, ECF No. 88.  The Court granted Lao PDR's third motion to amend on July 15, 2021, and subsequently denied Baldwin's and Bridge's motion to dismiss the Second Amended Complaint as moot.[11] Gov't of Lao People's Democratic Republic v. Baldwin, Case No. 2:20-CV-00195-CRK, 2021 WL 3007251 (D. Idaho July 15, 2021); Am. Scheduling Order, July 27, 2021, ECF No. 113; see also Am. Memo. Dec. and Order re: Third Mot. to Amend Compl., July 16, 2021, ECF No. 103.

---

[10] Lao PDR's motion for a preliminary injunction and temporary restraining order necessitated resolving Lao PDR's third motion to amend on an expedited basis.  Gov't of the Lao People's Democratic Republic v. Baldwin, No. 2:20-CV-00195-CRK, 2021 WL 3056871 (D. Idaho July 20, 2021).

[11] Lao PDR's third amended complaint was filed on July 16, 2021 and deemed filed as of May 21, 2021.  See Third Am. Compl. to Enforce Foreign Arbitration Awards, July 16, 2021, ECF No. 108; Gov't of Lao People's Democratic Republic v. Baldwin, Case No. 2:20-CV-00195-CRK, 2021 WL 3007251 at *8 (D. Idaho July 15, 2021).

**MEMORANDUM DECISION AND ORDER - 9**

The parties briefed new motions to dismiss and for jurisdictional discovery related to the Third Amended Complaint.  Pl.'s Mot. for Jurisdictional Disc., Aug. 5, 2021, ECF No. 120; Defs. Baldwin and Bridge-CNMI's Mot. to Dismiss Third Am. Compl. for Lack of Personal Jurisdiction or Improper Venue, Aug. 5, 2021, ECF No. 121 ("Mot. to Dismiss TAC"); Memo. in Supp. of [Baldwin and Bridge-CNMI's] Mot. to Dismiss Third Am. Compl. for Lack of Personal Jurisdiction or Improper Venue, Aug. 5, 2021, ECF No. 121-1; Am. Memo. in Supp. of Pl.'s Mot. for Jurisdictional Disc., Aug. 5, 2021, ECF No. 123; Pl.'s Opp'n to Mot. to Dismiss, Aug. 31, 2021, ECF No. 125; Reply in Supp. of [Mot. to Dismiss TAC], Sept. 15, 2021, ECF No. 126; Resp. to Pl. Mot. Jurisdictional Disc., Sept. 21, 2021, ECF No. 128.   In its motion for jurisdictional discovery, Lao PDR requested three categories of discovery: (1) Idaho Independent Bank account information for Baldwin, Bridge-CNMI, Sanum, LHNV, and the John K. Baldwin Irrevocable Trust (the "Baldwin Trust"); (2) property, including LLCs, owned by Baldwin and Bridge-CNMI in Idaho; and (3) organizational and trust documents for the Baldwin Trust and corporate records and depositions related to Lao PDR's theory that Sanum and LHNV are Baldwin's alter egos.  See Decl. of Robert K. Kry, Ex. C, Aug. 5, 2021, ECF No. 120-2.  On October 28, 2021, the Court held oral argument on the motions.  Oral Arg., Oct. 28, 2021, ECF No. 135.  On November 19, 2021, the Court issued a Memorandum Decision and Order granting in part and denying in part Lao PDR's motion for jurisdictional discovery.  Gov't of the Lao People's Democratic Republic, v. Baldwin, Case No. 2:20-CV-00195-CRK, 2021 WL 5435114 *1 (D. Idaho Nov. 19, 2021) ("JDO").

**MEMORANDUM DECISION AND ORDER - 10**

In the JDO, the Court ordered Baldwin and Bridge-CNMI to produce "all account statements from January 1, 2012 through December 31, 2019 for any account at Idaho Independent Bank that either Baldwin or Bridge[-CNMI] owns, owned, or partially owns or owned during that period . . . redacted to include only information that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations" and all "communications between Baldwin and Idaho Independent Bank from January 1, 2012 to December 31, 2019 that might reasonably be interpreted as relating to the Awards or the conduct that led to the arbitrations."[12] See JDO at *9.  The Court further ordered parties to submit a proposed schedule for supplemental briefing with respect to any new factual allegations or legal arguments with respect to Baldwin's and Bridge-CNMI's pending motion to dismiss the TAC based on the discovery granted.  Id.  On January 19, 2022, and February 18, 2022, Defendants produced documents pursuant to the Court's order.  Pl. Br. at 6; Decl. of David J. Branson, ¶ 4, dated Mar. 9, 2022, ECF No. 141-2 ("Branson Decl."); Fourth Mot. to Amend, Ex. C at 2.

On March 14, 2022, Lao PDR filed its fourth motion to amend the Complaint seeking to add Sanum and LHNV as defendants to the enforcement action.  See

---

[12] The Court denied Lao PDR's discovery requests for account statements from Idaho Independent Bank from January 1, 2012, to December 31, 2019, for accounts owned by Sanum, LHNV, and the Baldwin Trust; accounts that Baldwin had signing authority for; documents related to property, including LLCs, owned by Baldwin and Bridge-CNMI in Idaho from January 1, 2017 to present; organizational and trust documents for the Baldwin Trust; corporate records for Sanum and LHNV; and the deposition of non-party Clay Crawford because Sanum, LHNV, and the Baldwin Trust were not parties to the action.  JDO.

MEMORANDUM DECISION AND ORDER - 11

generally, Fourth Mot. to Amend; Pl. Br.  The PFAC makes the following new allegations.  First, Lao PDR states that upon review of emails and bank account statements produced by Bridge-CNMI and Baldwin, it learned that Sanum maintained two accounts at Idaho Independent Bank: the "x3650 Account" and the "x6033 Account."  PFAC ¶¶ 19, 26.  Second, the PFAC alleges that Sanum used the x3650 Account to make at least 39 arbitration-related payments between June 9, 2017, to December 28, 2018, totaling more than $1.3 million.[13]  Id. ¶¶ 20 (detailing PCA tribunal payments), 21 (detailing ICSID tribunal payments), 22 (detailing arbitration counsel payments), 23 (detailing expert and consulting payments).  Third, the PFAC alleges that Sanum used the x6033 Account to transfer profits from Savan Vegas Casino to Bridge-CNMI, id. ¶ 26, and alleges 11 transfers from the x6033 Account to Bridge-CNMI's "x7611 Account" and "x4269 Account" between January 11, 2012, and September 25, 2012, totaling $1,684,500.00.[14]  Id. ¶ 27.  Finally, the PFAC alleges that 77 arbitration-related payments were made from Bridge-CNMI's x7611 Account between April 9, 2013, and September 28, 2018, totaling $3,584,783.30 at the direction of LHNV, Sanum, or "Baldwin acting as the controlling mind for all three entities."[15]  Id. ¶¶ 31 (detailing ICSID tribunal payments), 32 (detailing PCA

---

[13] Lao PDR argues that Sanum likely paid additional arbitration expenses from the x3650 Account and notes that Baldwin and Bridge-CNMI did not produce bank statements for the x3650 Account because the Court denied Lao PDR's request for such statements.  See Pl. Br. at 5–7; Id. at *7.

[14] The PFAC also details seven international wire transfers from Sanum between January 1, 2012, and August 11, 2014, totaling $1,829,097.31.  PFAC ¶ 27.

[15] Lao PDR notes that "contrary to this Court's order, [Baldwin and Bridge-CNMI] withheld all records of arbitration-related payments to the Stinson law firm."  Pl. Br. at 7; see also Branson Decl. ¶¶ 21, 22; Fourth Mot. to Amend, Ex. C at 1.  In a letter

**MEMORANDUM DECISION AND ORDER - 12**

tribunal payments), 33 (detailing arbitration counsel payments); 34 (detailing expert and consulting payments), 35 (alleging that LHNV, Sanum, or Baldwin directed the payments).

## STANDARD OF REVIEW

The Court will grant leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Although amendments to pleadings are generally permitted with "extreme liberality, when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." Chodos v. West Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks and citations omitted).  The Court considers five factors when reviewing a motion for leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended [its] complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  A motion to amend may be denied solely on the grounds of futility.  Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010).  Thus, the Court may deny a motion to amend if the proposed amendment "would be subject to dismissal." Wheeler v. City of Santa Clara, 894 F.3d 1046, 1059 (9th Cir. 2018).  Whether an amendment is futile depends

---

dated February 18, 2022, counsel for Bridge-CNMI explained that although arbitration-related payments were made from Bridge-CNMI's accounts to Stinson and its predecessors, the firms worked on various matters for Bridge-CNMI at the time and it would be too burdensome to isolate the arbitration-related payments occurring between June 2014 and the end of 2019.  Fourth Mot. to Amend, Ex. C at 1.  Defendants' counsel proposed stipulating that "Stinson and predecessors were paid at least $500,000 from [Idaho Independent Bank] accounts for invoices covering work during the relevant period." Id.

on the nature of the proposed amendment and the opposition to the amendment. Where a plaintiff seeks to add a new party and the amendment is opposed on the grounds that the court lacks personal jurisdiction, the amendment is futile if it fails to set forth a prima facie case that the court has personal jurisdiction over the putative defendant(s). See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations are taken as true and factual disputes are resolved in the plaintiff's favor. Id.

## DISCUSSION

Lao PDR argues that this Court has specific jurisdiction over LHNV and Sanum and the relevant factors guiding amendment all weigh in favor of allowing the proposed amendment. Pl. Br. at 8–19; Pl. Reply at 2–10. Defendants focus almost exclusively on the purported futility of the PFAC, arguing that futility alone defeats this motion because, even accepting the facts as alleged by Lao PDR as true, Lao PDR fails to make a prima facie showing that this Court has specific jurisdiction over LHNV or Sanum. Defs. Br. at 5–20. Lao PDR fails to demonstrate a prima facie case for specific jurisdiction. The contacts alleged do not constitute purposeful availment, and although the cause of action is plausibly related to those contacts with respect to Sanum, it is not plausibly related to LHNV's purported contacts with Idaho. Finally, the exercise of jurisdiction over either proposed defendant would be unreasonable. Moreover, Lao PDR's tactic of responding to each of Defendants' motions to dismiss with motions to amend its complaint is prejudicial in that Defendants have been forced to expend time and money to keep re-filing motions to dismiss. The serial

**MEMORANDUM DECISION AND ORDER - 14**

amendments are particularly prejudicial here because the underlying basis for jurisdiction over Sanum and LHNV—that Sanum had an Idaho bank account that it used to pay arbitral fees and that Bridge-CNMI paid LHNV's arbitral fees using an Idaho bank account—were included in prior iterations of Lao PDR's complaint.  See, e.g., TAC ¶¶ 35, 49, 56–57, 60.  That Lao PDR waited until now to attempt to add Sanum and LHNV despite having at least some of the information on which it now relies suggests an undue delay in seeking this amendment.

## I.    Futility Based on Lack of Personal Jurisdiction

The Due Process Clause of the Fourteenth Amendment of the United States Constitution limits the Court's power to exercise personal jurisdiction over a nonresident defendant.[16]  Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990).  The Due Process Clause prevents the Court from asserting jurisdiction over a nonresident defendant unless the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (internal quotations omitted).  Furthermore, the nonresident's "'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into

---

[16] Idaho's long-arm statute confers jurisdiction beyond the limits of the Due Process Clause; therefore, the Court need only analyze whether the exercise of jurisdiction in this case comports with the Due Process Clause.  See Cornelius v. DeLuca, 709 F. Supp. 2d 1003, 1010 n.3 (D. Idaho 2010); see also  Smalley v. Kaiser, 103 Idaho 909, 912–914 (1997); Saint Alphonsus Regional Medical Center v. State of Wash., 123 Idaho 739, 743–745 (1993).

MEMORANDUM DECISION AND ORDER - 15

court there.'"[17]   Sher, 911 F.2d at 1361 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).   The Ninth Circuit applies a three-part test to determine whether the Court may exercise specific jurisdiction over a defendant:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987); see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).   The plaintiff bears the burden of satisfying the first two prongs of the test, and if the plaintiff meets that burden, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Sher, 911 F.2d at 1364 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (internal quotations omitted).   Absent an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction.   Id. at 1361. Here, Lao PDR failed to make a prima facie showing of purposeful availment for

---

[17] The Court may exercise either general or specific jurisdiction over a nonresident defendant.   Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984).   Lao PDR does not assert that Sanum and LHNV have "substantial" or continuous and systematic" contacts with Idaho to support the exercise of general jurisdiction, instead Lao PDR asserts that the Court has specific jurisdiction over Sanum and LHNV.   See PFAC ¶¶ 18–38; Pl. Br. at 9–14; see also Helicopteros, 466 U.S. at 414.

**MEMORANDUM DECISION AND ORDER - 16**

either putative defendant and failed to make a prima facie showing that but for the contacts the claim would not have arisen with respect to LHNV.  Finally, for both LHNV and   Sanum the exercise of personal jurisdiction in Idaho would be unreasonable.

### A.   Purposeful Availment

Due Process requires that a defendant "'purposefully direct[ ]' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  <u>Burger King</u>, 471 U.S. at 472 (internal citations omitted).  In contract[18] cases, a defendant must "reach out beyond one state and create continuing relationships and obligations with citizens of another state" to be subject to personal jurisdiction.  <u>Id.</u> (quoting <u>Travelers Health Assn. v. Virginia</u>, 339 U.S. 643, 647 (1950)) (internal quotations omitted).  The Ninth Circuit interprets this precedent to require that a defendant "purposefully avail[ ] himself of the privileges of conducting activities in the forum."  <u>Glencore Grain</u>, 284 F.3d at 1123.  "In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  <u>Sinatra v. Nat'l Enquirer</u>, 854 F.2d 1191, 1195 (9th Cir. 1988).  A defendant will not be found to have purposefully availed itself of the protections of the forum based solely on "random,

---

[18] Arbitration is generally a creature of contract.  Although the arbitrations at issue in this case were governed by bilateral investment treaties between Laos and China and the Netherlands, respectively, the parties to those arbitrations consented to arbitrate and were thus contractually bound by the arbitral tribunals' procedures and rules.  <u>See</u> TAC Ex. C, Annex A, Decision on Jurisdiction ¶¶ 64–65.

**MEMORANDUM DECISION AND ORDER - 17**

fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King, 471 U.S. at 475 (internal citations and quotations omitted). Instead, the Court looks to whether there is a "substantial connection" with the forum state. McGee, 355 U.S. at 223; see also Kulko v. Cal. Super. Ct. in and for City & Cnty. of S.F., 436 U.S. 84, 94 n.7 (1978).

Purposeful availment must be based on intentional acts of the defendant, but intentional acts alone are not enough to establish jurisdiction. Burger King, 471 U.S. at 478–79. Although a contract with a forum resident is an intentional act, it is insufficient by itself to establish jurisdiction; instead, the Court must analyze the consequences of the defendant's intentional acts as well as the relationship between the defendant and the forum. Id.; see also Walden v. Fiore, 571 U.S. 277, 283–86 (2014). Where a contract with a resident of the forum is the basis for the alleged jurisdiction, the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479.

Here, Lao PDR alleges that the Court has jurisdiction over Sanum based in part on two bank accounts that Sanum maintained in Idaho, which it used to receive funds related to the conduct of Sanum's operation of the Savan Vegas Casino in Laos and send funds to various third-parties related to the 2012 BIT Arbitrations and the 2017 BIT Arbitrations.[19]   PFAC ¶¶ 18–28. Lao PDR alleges that the Court has

---

[19] Lao PDR also alleges that the Court has jurisdiction over Sanum based on payments of Sanum's arbitration fees made by Bridge-CNMI from Bridge-CNMI's

**MEMORANDUM DECISION AND ORDER - 18**

jurisdiction over LHNV based solely on payments of LHNV's arbitration fees made by Bridge-CNMI from Bridge-CNMI's Idaho bank account.  Id. ¶¶ 29–38.  These contacts are insufficient to demonstrate purposeful availment of the privileges of conducting activities in Idaho.

LHNV did not purposefully avail itself of conducting business in Idaho.  The activities Lao PDR alleges LHNV to have conducted in Idaho are the prototypical unilateral activities of a third-party that cannot form the basis of personal jurisdiction.  See Burger King, 471 U.S. at 475.  The only alleged connection between LHNV and Idaho is Bridge-CNMI using its Idaho bank account to pay certain arbitration costs and fees on LHNV's behalf.[20]  PFAC ¶¶ 29–36.  Thus, Lao PDR does not allege that LHNV took any action in Idaho.  The only alleged connection arises solely from a third-party's, i.e. Bridge-CNMI's, alleged contacts with Idaho.  Such allegations are not sufficient to confer jurisdiction over LHNV.  That LHNV allegedly directed some other entity to make the payments means that LHNV's connection to Idaho is too attenuated to confer jurisdiction.  Helicopteros, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").  LHNV is not alleged to have any

---

bank account.  PFAC ¶¶ 29–38.  These contacts are insufficient to demonstrate purposeful availment of the privileges of conducting activities in Idaho.

[20] This allegation is not new or recently discovered, as it was included in the TAC.  TAC ¶ 56.  Thus, it is unclear why Lao PDR seeks to add LHNV at this point in the litigation.  Nevertheless, as discussed below, LHNV's alleged forum activities are insufficient to demonstrate purposeful availment.

**MEMORANDUM DECISION AND ORDER - 19**

property, office, employee, bank account, or registered agent in Idaho, and there is no allegation that LHNV conducts any of its business in Idaho.  Bridge-CNMI's use of its own bank account to make certain payments on LHNV's behalf does not give the Court jurisdiction over LHNV.

Furthermore, although Lao PDR contends that LHNV directed Bridge-CNMI to make the payments in question, Lao PDR does not allege that LHNV specifically directed Bridge-CNMI to make payments from its Idaho account.  See PFAC ¶¶ 35–36.  Indeed, even assuming LHNV directed Bridge-CNMI to make the payments, the fact that the payments came from Bridge-CNMI's Idaho bank account appears to be random and fortuitous.  Without any allegation that LHNV specifically directed Bridge-CNMI to make the payments from an Idaho account, or that there was a particular reason to use an Idaho account, the payments could have been made from anywhere, they just happen to have been made from an account in Idaho.

Moreover, Lao PDR's assertion that Bridge-CNMI acted as a mere instrumentality of LHNV in making those payments stands in stark contrast to Lao PDR's allegations and arguments up to this point.  Prior to the present motion, Lao PDR characterized LHNV as a "shell company" that was created pursuant to a "treaty-shopping plan" "solely to take advantage of the Lao-Dutch BIT," and that has no assets, no employees, and no board members that take any part in LHNV's decisions.  See, e.g., TAC ¶¶ 12, 40, 60, 83, 154, 154 n.2, 203.[21]  Lao PDR's abrupt

---

[21] Apart from TAC ¶ 203, these contradictory allegations are repeated in the PFAC. See PFAC ¶¶ 13, 62, 82, 105, 176, 176 n.2.  Therefore, the Court cannot accept at face

reversal to now argue that LHNV was in fact directing Bridge-CNMI to make payments on its behalf both undermines and is undermined by its previous position. LHNV has not purposefully availed itself of conducting activities in Idaho.[22]

Lao PDR's assertion of this Court's jurisdiction over Sanum is far stronger, but also falls short of the purposeful availment standard. Lao PDR alleges that Sanum owned multiple Idaho bank accounts and used those accounts to pay for various costs and fees related to Sanum's arbitration against Lao PDR. PFAC ¶¶ 18–28. Unlike LHNV, whose only purported contacts resulted from the unilateral activity of Bridge-CNMI, Sanum does have independent contacts with Idaho. However, those contacts do not demonstrate purposeful availment because the maintenance and use of forum bank accounts, by itself, is insufficient to confer jurisdiction over a defendant. See Roth v. Garcia Marquez, 942 F.2d 617, 620–22 (9th Cir. 1991). Sanum's use of forum bank accounts is not purposeful: there is no allegation that Sanum used an Idaho bank account for any particular reason. Moreover, Sanum's use of its Idaho accounts was solely for transactions that occurred outside of Idaho; the Idaho accounts were only repositories from and to where Sanum transferred certain monies. Such activity does not meet the Ninth Circuit's standard for purposeful availment.

In Roth, the Ninth Circuit analyzed Gabriel Garcia Marquez's contacts with California to determine its jurisdiction over him in a contract dispute related to the

---

value Lao PDR's allegation that Bridge-CNMI acted as a mere instrumentality of LHNV in making the payments in question.

[22] For these same reasons, any arbitration-related payments Bridge-CNMI allegedly made on behalf of Sanum do not purposely avail Sanum of conducting activities in Idaho. See PFAC ¶¶ 29–36.

**MEMORANDUM DECISION AND ORDER - 21**

movie rights to his novel "<u>Love in the Time of Cholera</u>." <u>Roth</u>, 942 F.2d at 619. The Ninth Circuit noted that Garcia Marquez "maintained a checking account, not his principal one, in Los Angeles since 1988 for the purposes of having an account in dollars for certain transactions occurring outside of California." <u>Id.</u> at 620. However, the Ninth Circuit did not find that Garcia Marquez had purposefully availed himself of the protections of conducting business in California by reason of his maintenance and use of a California bank account. <u>Id.</u> at 621–22. In fact, the Ninth Circuit did not even mention Garcia Marquez's use of a California bank account in its purposeful availment analysis.[23] <u>Id.</u>

Just like the defendant in <u>Roth</u>, Sanum maintained and used forum bank accounts for transactions occurring outside of Idaho. <u>See</u> PFAC ¶¶ 18–28; <u>Roth</u>, 942 F.2d at 620. The transactions for which Sanum used its Idaho bank accounts occurred, like all other relevant conduct, in Southeast Asia.[24] <u>See</u> PFAC ¶¶ 18–28. Sanum's contracts with Idaho Independent Bank have not been filed with the Court; however, Plaintiff alleges nothing to demonstrate that Sanum's use of these accounts was part of an effort to purposefully conduct activities in Idaho.

---

[23] The Ninth Circuit found purposeful availment to be a close call, but ultimately found Garcia Marquez had purposefully availed himself of doing business in California based on the contemplated performance in California of the alleged contract that Garcia Marquez had negotiated with the plaintiff. <u>Roth</u>, 942 F.2d at 622.

[24] The parties dispute whether the Court should consider all the transactions identified in the PFAC. Defs. Br. at 1–4, 15–17; Pl. Reply at 5–8. For the purposes of this motion, the Court considers all transactions alleged in the PFAC. However, as discussed below, even when taking into account the disputed transactions, neither Sanum nor LHNV has purposefully availed itself of conducting business in Idaho.

**MEMORANDUM DECISION AND ORDER - 22**

Admiral Ins. Co. v. Omega Demolition, Corp., illustrates the approach sanctioned by the Ninth Circuit. Case No. 2:15-CV-00413-BLW, 2016 WL 633930, *1 (D. Idaho Feb. 16, 2016). In Admiral, the Court held that contacts with Idaho similar to Sanum's were insufficient to confer jurisdiction. Id. at *3–4. The defendant in Admiral communicated, negotiated, and entered into a contract with an Idaho corporation, which partially performed the contract in Idaho, and made payments to the Idaho corporation's Idaho bank account. Id. The Admiral court held that communications with an Idaho corporation, even when the purpose of the communications is to negotiate a contract is insufficient to confer jurisdiction. Id. at *3 (citing Applied Underwriters, Inc. v. Combined Mgmt., Inc., 371 F. App'x 834, 935 (9th Cir. 2010)). That court further found "no authority that supports [plaintiff's] proposition that a defendant somehow avails itself of the forum state simply by sending payments to a bank account located within that forum." Id. Finally, the Admiral court held that the Idaho entity's activities in Idaho in furtherance of the contract constituted unilateral activity of a third party. Id. ("AED hired four Idaho residents to work on the Project, created a site-specific work plan in Idaho, transported equipment from Idaho to the Project site, and ordered the explosives to be used on the project from Idaho. Noticeably absent from this string of facts is any action taken by [defendant] in Idaho").

Here, Sanum is alleged to have entered into a contract with Idaho Independent Bank for the bank to maintain certain bank accounts for Sanum in Idaho. See PFAC ¶¶ 18–28. Lao PDR does not allege that Sanum ever entered Idaho for the purpose

of negotiating that contract, nor does Lao PDR allege that Sanum conducted any activities in Idaho related to the contract with Idaho Independent Bank.  <u>See generally</u> <u>id.</u>  Indeed, the only activities in Idaho related to Sanum's maintenance of bank accounts with Idaho Independent Bank were conducted by the bank itself, not Sanum.  <u>Cf.</u> <u>Spencer v. Greenwald</u>, Case No. 4:20-CV-00440-BRW, 2021 WL 1976080, at *4–5 (D. Idaho Jan. 4, 2021) (ownership, profits from, and general, but not day-to-day, control over Idaho subsidiary insufficient for specific jurisdiction because only the subsidiary, not the parent, acted in Idaho); <u>see also, e.g.</u> <u>Bryant v. Matrix Tr. Co., LLC</u>, Case No. 1:16-CV-00559-EJL-REB 2018 WL 4372943, at *9 (D. Idaho Feb. 20, 2018) (contract with Idaho resident insufficient for purposeful availment and collecting cases).[25]  Sanum's communications via the international wires directing the bank to send and receive money to and from outside of Idaho in connection with activities and transactions that occurred outside of Idaho is insufficient to sustain a finding of purposeful availment.  <u>See</u> <u>Applied Underwriters</u>, 371 F. App'x at 935.

---

[25] In contrast, this Court has found jurisdiction in cases where a defendant's direct activities occur in Idaho.  <u>See</u> <u>Wheaton Equip. Co. v. Franmar, Inc.</u>, Case No. CV08-276-S-EJL, 2009 WL 464337, at *11 (D. Idaho Feb. 24, 2009) (ownership of joint venture operating in Idaho); <u>Wayne Enterprises, LLC v. McGhee</u>, Case No. 1:15-CV-00195-EJL, 2016 WL 3620731, at *4 (D. Idaho June 28, 2016) (hiring Idaho sales agent to market investment opportunities in Idaho); <u>In re J&J Chem., Inc.</u>, 596 B.R. 704, 716–17 (Bankr. D. Idaho 2019) (maintenance of interactive website that allowed for Idaho citizens to contract with company and registration to do business in Idaho); <u>see also</u> <u>Ayla, LLC v. Alya Skin Pty. Ltd.</u>, 11 F.4th 972, 982 (9th Cir. 2021) ("When a defendant corporation chooses to associate itself with a forum through a contractual relationship that 'envision[s] continuing and wide-reaching contacts,' the defendant purposefully avails itself of the forum and satisfied minimum contacts" (quoting <u>Burger King</u>, 471 U.S. at 480) (brackets in original)).

**MEMORANDUM DECISION AND ORDER - 24**

Lao PDR contends that Sanum's use of its Idaho bank accounts to pay arbitration fees, expert witness fees, and attorneys' fees constitutes purposeful availment of the privileges and protections of doing business in Idaho.  Pl. Br. at 9–12.  However, that the bank Sanum used to make those payments happens to have been located in Idaho does not demonstrate that Sanum purposely entered Idaho to transact business.  Indeed, the bank accounts that Sanum used could have been from banks located anywhere; that they were in Idaho is happenstance.  See, e.g., James R. Reis 1999 Revocable Living Tr. v. Citibank, N.A., Case No. 3:18-CV-87-M, 2019 WL 1877181, at *7 (N.D. Tex. Mar. 29, 2019), Mag. Rep. and Rec. adopted, Case No. 3:18-CV-87-M, 2019 WL 1876863 (N.D. Tex. Apr. 26, 2019).

Lao PDR does not allege that there is any particular reason that Sanum chose Idaho as the location from and to which it sent and received bank transfers.  Contra Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013) (maintenance and use of correspondent bank in New York was sufficient for jurisdiction because defendant bank purposefully chose "New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States" (quoting Licci v. Lebanese Canadian Bank, 20 N.Y.3d 327, 984 N.E.2d 893 (2012)).  Lao PDR does not allege that there are similar advantages and considerations that attend choosing to bank in Idaho as there are in New York.[26]

----

[26] Lao PDR argues that "the only reasonable inference[s] one can draw" from the fact that Sanum used Idaho banks for the alleged transactions are that Sanum considered Idaho to be "an efficient means to manage its finances" and that Sanum used the

Nor does Lao PDR assert that sending and receiving money via bank transfers is anything but tangentially related to Sanum's business.  Contra Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436, 438 (3d Cir. 1987) (maintenance of "zero balance" correspondent account was sufficient for jurisdiction because the banking activities the defendant conducted via the correspondent account were "the bread and butter of its daily business"); see also Licci, 732 F.3d at 168 (bank using correspondent account to operate its banking business in New York was sufficient for jurisdiction).  Lao PDR does not allege that Sanum is in the banking business, only that Sanum is in the casino business.  See PFAC ¶ 12.

For this reason, Ballard v. Savage, on which Lao PDR relies, is distinguishable. 65 F.3d 1495 (9th Cir. 1995).  The Ballard court held that an Austrian bank's operation of its business in the United States through the maintenance and use of a correspondent account, in addition to relying on U.S. customers for a large percentage

_____

Idaho banking system because it is "dependable and transparent."  PFAC ¶ 24; Pl. Reply at 3.  First, the PFAC's allegation that Sanum must have considered Idaho Independent Bank to be "an efficient way to manage its finances" falls far short of Licci, where the foreign bank's choice of New York was not based solely on "efficiency." Second, even if the Court accepts that Sanum believed Idaho to be an "efficient" place to bank, Lao PDR does not allege that Idaho's purported efficient banking system is in any way unique.  Moreover, if the maintenance and use of a bank account here can only lead to the inference that Idaho was purposefully chosen, then every intentional contact with a forum would be sufficient for purposeful availment.  Without more, the argument is ipse dixit, one could always say that a defendant must have chosen whichever forum is at issue because it chose that forum.  Lao PDR offers no explanation for why the Court should infer the same considerations were at issue for Sanum when it chose to open and use a bank account in Idaho as the for the bank in Licci when it chose to bank in New York.  Lao PDR offers no explanation for why it is reasonable to impute the same benefits to banking in Idaho as to banking in New York.

**MEMORANDUM DECISION AND ORDER - 26**

of its business, satisfied the requirements of Due Process to subject the bank to jurisdiction.  Id. at 1498–1500.  Unlike the defendant in Ballard, Lao PDR does not allege that Sanum is a bank, or that Sanum conducts its business through bank accounts such that Sanum could be said to be operating its business in Idaho as a result of its use of bank accounts in Idaho.  Sending and receiving payments from and in Idaho has little to do with operating casinos in Laos.  The payments could have been sent to and from anywhere, and Sanum is not alleged to have received any particular benefit from the fact the payments were sent from and received in Idaho.  Thus, the allegations are insufficient to support a finding that Sanum purposefully availed itself of conducting activities in Idaho based solely on its use of bank accounts that happened to have been located here.  The maintenance and use of Idaho bank accounts to send and receive certain payments does not constitute purposeful availment for the purposes of specific jurisdiction.

### B.    Arising Out Of or Relating To

Had Lao PDR met its burden to demonstrate that Sanum and LHNV purposely availed themselves of conducting activities in Idaho, it would also need to show that its claims "arise out of or relate to the defendant's contacts with the forum."  Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty., 137 S. Ct. 1773, 1780 (2017) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021).  The link between the forum, the defendant, and the claim need not be causal in nature, as specific jurisdiction will lie where the plaintiff establishes some nexus between the forum,

the defendant, and the litigation.  Walden v. Fiore, 571 U.S. at 283–84; Ford Motor Co., 141 S. Ct. at 1025; see also Ford Motor Co., 141 S. Ct. at 1033 (Alito, J. concurring) (questioning the creation of a separate test to determine if a contact is related to a claim, but concurring that a strict causal test is not required by the phrase arising out of or relating to).  Conversely, a court lacks specific jurisdiction where the connection between the forum state and the defendant's contacts lacks any connection to the plaintiff's claim.  See Ford Motor Co., 141 S. Ct. at 1026.

The Ninth Circuit has adopted a "but for" test to determine whether a defendant's contact with the forum arises out of the plaintiff's claim.  Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir. 1990), rev'd on other grounds, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991).  As explained in W. States Wholesale Nat. Gas Antitrust Litig., "under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum if a direct nexus exists between those contacts and the cause of action.'" 715 F.3d 716, 742 (9th Cir. 2013) (quoting Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 894 (9th Cir. 1996)); see also Glencore Grain, 284 F.3d at 1123–24 (plaintiff "must show that it would not have been injured 'but for' [the defendant's] contacts with California").  Although such a liberal standard can be criticized,  see Ford Motor Co., 141 S. Ct. at 1034  (Gorsuch, J. concurring) ("At a high level of abstraction, one might say any event in the world would have happened 'but for' events far and long removed"), the Shute Court explains that a restrictive reading of "arising out of" is not required to protect potential defendants from an unreasonable exercise of jurisdiction.   Shute, 897 F.2d at 385.   Instead, the

MEMORANDUM DECISION AND ORDER - 28

reasonableness prong of the jurisdiction analysis protects potential defendants from the improper exercise of jurisdiction; because, if the connection between a potential defendant's forum-related activities and the claim is "too attenuated," the exercise of jurisdiction over the potential defendant would be unreasonable.  Id.

As Lao PDR has not alleged any contacts between LHNV and Idaho, Lao PDR's alleged injuries cannot have arisen "but for" such non-existent contacts.  Lao PDR has not met its burden to show a prima facie case for exercising specific jurisdiction over LHNV.  However, Lao PDR does allege facts which demonstrate a sufficient nexus between Sanum's banking activities and Idaho.  Here, Lao PDR has alleged direct contact between Sanum and Idaho.  Lao PDR alleges that Sanum used its x3650 Account to make at least 39 arbitration-related payments between June 9, 2017, to December 28, 2018.  PFAC ¶¶ 20–23.  Absent Sanum's arbitration-related payments to counsel, experts, witnesses, and the PCA tribunal, the 2017 BIT Arbitrations would not have occurred and there would be no Final Sanum Award for Lao PDR to enforce.  Thus, Lao PDR has made a prima facie case demonstrating a nexus between its claim, Sanum, and Idaho.

## C.    Reasonableness

Even if Lao PDR had met its burden under the first two prongs, exercising jurisdiction over Sanum and LHNV would not be reasonable.  See Burger King, 471 U.S. at 476; World-Wide Volkswagen, 444 U.S. at 292; see also Lake, 817 F.2d at 1421–22.  The Court's evaluation of reasonableness requires weighing the burden on the defendant to litigate in the forum against other relevant factors.  See Burger

**MEMORANDUM DECISION AND ORDER - 29**

<u>King</u>, 471 U.S. at 476–77.  The Ninth Circuit evaluates seven factors to determine if the exercise of jurisdiction is reasonable:

> (1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum.

<u>Glencore Grain</u>, 284 F.3d 1114, 1125 (9th Cir. 2002) (quoting <u>Myers v. Bennett L. Offs.</u>, 238 F.3d 1068, 1075 (9th Cir. 2001); <u>see also</u> <u>Ayla</u>, 11 F.4th at 984.  In weighing these factors, the Court concludes that the exercise of personal jurisdiction over Sanum and LHNV would not be reasonable.

The first factor, purposeful interjection, weighs in favor of Defendants because Sanum's connection to Idaho via maintenance and use of Idaho bank accounts is too attenuated to be considered more than slight purposeful interjection into the forum. The Court considers the degree of the defendant's interjection into the forum even if the purposeful availment prong is satisfied.  <u>Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1132 (9th Cir. 2003); <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1323 (9th Cir. 1998); <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488 (9th Cir. 2005); <u>Ins. Co. of N. Am. v. Marina Salina Cruz v. Marina Salina Cruz</u>, 649 F.2d 1266, 1271 (9th Cir. 1981); <u>but see</u> <u>Sinatra</u>, 854 F.2d at 1199 ("purposeful interjection is analogous to the purposeful direction analysis"); <u>Ayla</u>, 11 F.4th at 984 (9th Cir. 2021) (same).  "The degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction" and it is

**MEMORANDUM DECISION AND ORDER - 30**

less reasonable for the Court to exercise jurisdiction over a non-resident defendant when the degree of interjection is low.  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1288 (9th Cir. 1977) (collecting cases); Ins. Co. of N. Am., 649 F.2d at 1271; see also Core-Vent, 11 F.3d at 1488.

Here, LHNV has no jurisdictionally relevant contacts with Idaho, and Lao PDR alleges that Sanum's only contact with Idaho is through bank transfers.  PFAC ¶¶ 18–38.  Bank transfers, without more, are minimal interjections into the forum.  Cf. Ins. Co. of N. Am., 649 F.2d at 1271 (out-of-state marina only slightly purposefully interjected itself into forum by making repairs to the ship in question "and a few other ships" that were used in the forum); compare Harris Rutsky, 328 F.3d 1132 (purposeful interjection found where business was conducted in forum state and defendant drafted, consummated, and largely performed the contract underlying the dispute in the forum).  Lao PDR does not allege that Sanum or LHNV operated their businesses, advertised services, or performed any contracts in Idaho, and Lao PDR did not suffer harm in Idaho.  See PFAC ¶¶ 18–38.

The second factor, the burden on defendants to litigate in the forum, also weighs in favor of Defendants.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty., 480 U.S. 102, 114 (1987).  Despite "modern advances in communications and transportation hav[ing] significantly reduced the burden of litigating in another country," Sinatra,

MEMORANDUM DECISION AND ORDER - 31

854 F.2d at 1199,  this factor tips in favor of Sanum and LHNV.  See Ziegler v. Indian
River Cnty., 64 F.3d 470 (9th Cir. 1995) ("the law of personal jurisdiction is 'primarily
concerned with the defendant's burden'" (quoting Terracom v. Valley Nat. Bank, 49
F.3d 555, 561 (9th Cir. 1995)).  Sanum and LHNV are incorporated and operate in
Macau and Aruba respectively.  PFAC ¶¶ 12–13.  Neither party is alleged to have a
physical presence, employees, or agents in Idaho.  See id.  Apart from bank account
records, which appear to be only tangentially related to this action to enforce arbitral
awards, none of Sanum's or LHNV's evidence or witnesses appear to be located in
Idaho.  See Defs. Br. at 18.  The burden on Sanum and LHNV of defending against
Lao PDR's claims in Idaho is significant.

The third factor, the extent to which exercising jurisdiction over Sanum and
LHNV conflicts with the sovereignty of their home states, is neutral.  The parties
acknowledge that there is no sovereignty issue in this case and argue that this factor
is neutral.  Defs. Br. at 19, Pl. Reply at 9.  The Court agrees.

The fourth and fifth factors, the forum state's interest in adjudicating the suit
and efficient resolution of the controversy, also weigh against this Court asserting
jurisdiction over Sanum and LHNV.  Lao PDR points to Idaho's interest in ensuring
that its banks are not used to conduct illegal activities abroad.  Pl. Reply at 9.  Idaho
may have an interest in how its banks are used, but that interest is not the focus of
the dispute before the Court.  This dispute involves the enforcement of arbitral
awards reached by ICSID and PCA concerning the operation of casinos in Laos by

companies headquartered and incorporated in Aruba and Macau.[27]  See id. at 1, 5–6.
Nor would Idaho seem to be the most efficient forum.  In determining the most
efficient forum, the Court focuses on the location and evidence of the witnesses.
Harris Rutsky, 328 F.3d at 1133.  Although it is unclear to the Court what evidence
or witnesses will be necessary for this enforcement action, Lao PDR alleges nothing
about the witnesses or evidence suggesting that Idaho would be more convenient than
alternative forums.

The sixth factor, the importance of the forum to the plaintiff's interests in
convenient and effective relief, weighs slightly in favor of Lao PDR.  Lao PDR seeks
a judgment enforcing its arbitral awards.  Assuming it is successful, and assuming
Defendants refuse to pay the judgment, Plaintiff argues it will seek to enforce a
judgment against property in Idaho.  Pl. Reply at 9.  An Idaho court can attach
property in Idaho based on an Idaho judgment and therefore, to the extent Sanum
and LHNV have any property in Idaho, Lao PDR would not have far to go to enforce
its judgment in Idaho.[28]  However, an Idaho court can also enforce the judgment of

_____

[27] Lao PDR also argues that Idaho has an interest in the enforcement of arbitral
awards.  Pl. Reply at 9.  The United States has an interest in the enforcement of
foreign arbitral awards.  See generally, Federal Arbitration Act, 9. U.S.C. §§ 201 et
seq.; Convention on the Recognition and Enforcement of Arbitral Awards, opened for
signature June 10, 1958, 21 U.S.T. 2517, reprinted in 9 U.S.C. § 201.  The Court fails
to see how Idaho's interest is unique in such a way that it weighs in favor of exercising
jurisdiction over these defendants.
[28] Lao PDR relies on its various alter ego theories, one of which the Court has already
found unlikely to succeed, in asserting that Sanum and LHNV have assets in Idaho.
See Government of the Lao People's Democratic Republic v. Baldwin, Case No. 2:20-
CV-00195-CRK, 2021 WL 3056871, at *4–8 (D. Idaho July 20, 2021).  To the extent
that Lao PDR suggests that it will enforce the Final Awards by seizing "property in
Idaho that belongs to Defendants and their alter egos," Pl. Reply at 9, Lao PDR fails

**MEMORANDUM DECISION AND ORDER - 33**

any court in the United States, including one from the District Court for the Northern

Marina Islands.  See 48 U.S.C. § 1824 (2018); U.S. Const. art. IV, § 1.

Finally, the seventh factor, availability of an alternative forum, weighs against

the Court's jurisdiction, as there appears to be more than one alternative forum

available to Lao PDR.  Harris Rutsky, 328 F.3d at 1133–34 (plaintiff bears the burden

of establishing that an alternative forum is unavailable); Amoco Egypt Oil Co. v.

Leonis Nav. Co., 1 F.3d 848, 853 (9th Cir. 1993); Sinatra, 854 F.2d at 1201.

Singaporean courts are an alternative forum for this enforcement action as

Singaporean courts already possess jurisdiction over Sanum and LHNV.[29]  See Pl.'s

Opp'n to Defs.' Mot. to Stay Proceedings, 1, May 20, 2022, ECF No. 150

(characterizing Singapore's International Commercial Court as "prestigious").

Additionally, to the extent that Lao PDR seeks to enforce the Final Awards against

Baldwin or Bridge-CNMI as the alter ego of Sanum, LHNV, Campbell, and Coleman,

it would seem the District Court for the Northern Mariana Islands is an alternative

forum.  Bridge-CNMI is a CNMI limited liability company, with a business address

in Saipan, CNMI, and Baldwin has declared under penalty of perjury that he is a

resident of CNMI.  PFAC ¶ 9; Decl. of [Baldwin] ¶ 7, dated Sept. 21, 2020, ECF No.

---

to identify any property presently in the forum to seize.  Lao PDR concedes that
Bridge-CNMI closed its accounts at Idaho Independent Bank "by November 2019."
PFAC ¶¶ 253, 255.  Baldwin contends that Sanum maintained bank accounts at
Idaho Independent Bank "through 2018."  Decl. John K. Baldwin ¶ 6, dated Apr. 14,
2022, ECF No. No. 147-5.  Thus, it is unclear whether there are no known assets in
Idaho for Lao PDR to seize if its enforcement action is successful.
[29] It is undisputed that Lao PDR is currently involved in litigation related to the Final
Awards in Singapore, see PFAC ¶ 144 Defs. Br. at 19; therefore, commencing an
enforcement action in Singapore presents no additional inconvenience.

**MEMORANDUM DECISION AND ORDER - 34**

31-1.  Plaintiff argues no other forum will do because "only an Idaho court can attach Idaho property."  Pl. Reply at 9.  However, CNMI is a United States territory and decisions by its courts are entitled to full faith and credit under the Full Faith and Credit Clause of the United States Constitution.[30]  U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State"); 28 U.S.C. § 1738 (2018) (authenticated judicial proceedings from U.S. territories have the same full faith and credit in every U.S. court as they have in the courts of such U.S. territory).  Thus, Lao PDR could enforce a judgment from the CNMI against any of Sanum's or LHNV's property located in Idaho.

Thus, five out of the seven <u>Burger King</u> factors weigh against asserting jurisdiction over Sanum and LHNV.  Of the remaining two factors, one is neutral and only one weighs in favor of exercising jurisdiction.  Therefore, the Court finds the exercise of jurisdiction over Sanum and LHNV would be unreasonable.

---

[30] The Court sees no additional inconvenience to Lao PDR should it wish to commence an enforcement action in CNMI.  Lao PDR is a foreign plaintiff with no ties to Idaho and is currently represented by U.S. counsel in this enforcement action.  To the extent that Lao PDR is inconvenienced, the Ninth Circuit has held that inconvenience to the plaintiff is not a factor of paramount importance.  <u>Harris Rutsky</u>, 328 F.3d at 1133. Lao PDR continues to argue that the Commonwealth of the Northern Mariana Islands is not a more convenient forum because "the sole Federal Judge in Saipan is conflicted from sitting on a case involving Bridge[-CNMI]," PFAC ¶ 98, and has previously argued that Lao PDR will not consent to a Magistrate Judge.  Memo. in Supp. Second Mot. to Amend Compl. at 15, Mar. 5, 2021, ECF No. 45-1.  Lao PDR's argument is unpersuasive because, even assuming, <u>arguendo</u>, that a judge is unable to preside over a case, the Chief Judge of the Ninth Circuit may temporarily assign a judge to serve in the District Court for the Northern Mariana Islands "whenever such assignment is necessary for the proper dispatch of the business of the court."  48 U.S.C. § 1821(b)(2) (2018).

## II.      Remaining Factors for Amendment

The Court considers the remaining factors relevant to a motion to amend: prejudice, undue delay, prior amendment, and bad faith. <u>Nunes</u>, 375 F.3d at 808. Defendants oppose the motion on the grounds that they would be prejudiced by yet another amendment to Lao PDR's Complaint.

Plaintiff contends there would be no prejudice to the Defendants if the court were to grant the amendment. Pl. Br. at 15–16. Defendants object to the additional cost of another motion to dismiss. Defs. Br. at 20. The Court agrees that it would be prejudicial to allow Lao PDR to file a fifth version of its complaint, with each amendment coming while a motion to dismiss was pending. <u>See</u> <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1161 (9th Cir. 1989) (repeated amendments after motions to dismiss and the attendant litigation costs constitutes undue prejudice); <u>see also</u> <u>Parker v. Joe Lujan Enters., Inc.</u>, 848 F.2d 118, 121 (9th Cir. 1988) (prejudice where defendants would "be forced to reprepare its case for trial on an entirely different factual theory of liability . . . [and] conduct more off-shore discovery"); <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 809 (9th Cir. 1988) (additional discovery and rewriting trial briefs constituted prejudice); <u>Jackson v. Bank of Haw.</u>, 902 F.2d 1385, 1388 (9th Cir. 1990) (relitigating issues that had been "extensively litigated" constituted undue prejudice).[31]

---

[31] Lao PDR contends that it could file a new case against the proposed defendants and then seek to consolidate the cases, so granting the amendment would be more efficient. Pl. Br. at 16. The cases cited by Lao PDR are inapposite, as they discuss re-filing where leave to amend is denied solely on the basis of prejudice, not on futility, as is the case here. <u>Id.</u> The Court does not express an opinion on the propriety of

The prejudice to Defendants is even more relevant because the basic allegations on which Lao PDR relies in support of its argument that Sanum and LHNV are subject to jurisdiction in this Court are not new. Lao PDR previously and repeatedly argued that Baldwin should be subject to this Court's jurisdiction based in part on the facts that Sanum paid arbitration fees from its Idaho bank account and Bridge-CNMI paid LHNV's arbitration fees from Bridge-CNMI's Idaho bank account. Decl. of David Branson in Supp. of Pl.'s Resp. to John K. Baldwin's Mot. to Dismiss [Dkt. 34], ¶ 38 and Ex. J, dated Oct. 22, 2020, ECF No. 37-1 ("Branson 2020 Decl.");[32] see also Memo. Supp. Pl.'s Mot. for Jurisdictional Disc. at 5, Aug. 5, 2021, ECF No. 120-1 ("Mot. for Juris. Disc."); TAC ¶¶ 56–57 (alleging that arbitration fees were paid from Idaho accounts). That Lao PDR has known since at least October 2020 that Sanum maintained bank accounts in Idaho and used those accounts to make and receive payments related to the parties' disputes weighs against granting leave to

---

filing an enforcement action against Sanum and LHNV in the District Court of Idaho after being denied leave to amend based on futility. Further, the relevant prejudice is to the current Defendants, not to Sanum and LHNV. The prejudice the current Defendants complain of is that they will be forced to continue "to play a game of whack-a-mole, each time expending time and money writing briefs identifying the flaws in each iteration of [Lao PDR's] proposed amended complains, whereupon [Lao PDR] seeks another amendment." Defs. Br. at 20.

[32] Lao PDR did not specifically allege that the transaction identified in paragraph 38 and Exhibit J of the Branson 2020 Declaration came from a Sanum account; however, Exhibit J is an "Outgoing Wire Notification" sent to a Sanum email address referencing a "Sanum Investments Payment." Branson 2020 Decl. at Ex. J. That information is sufficient to support an inference that the payment was made from a Sanum account, particularly as Lao PDR was already aware of at least one account Sanum maintained at Idaho Independent Bank. See id. ¶ 35, Ex. H.

**MEMORANDUM DECISION AND ORDER - 37**

amend now with Lao PDR asserting additional similar transactions as the basis for jurisdiction.  See Branson 2020 Decl. ¶¶ 35–38, Ex. H–J.

The Court denied Lao PDR's request for Idaho bank account information pertaining to Sanum and LHNV in its order on jurisdictional discovery because Sanum and LHNV were not parties to the action and the purpose of the jurisdictional discovery was to uncover facts supporting the Court's jurisdiction over Baldwin and Bridge-CNMI.  JDO at *8.  Although Lao PDR discovered more transactions from those accounts during the course of the court-ordered jurisdictional discovery, Lao PDR has offered no satisfactory explanation of why it could not have brought these claims against Sanum and LHNV before now.  Indeed, Lao PDR attempted to use the transactions identified in October 2020 as the basis for jurisdiction over Baldwin and Bridge, or to conduct jurisdictional discovery to demonstrate such jurisdiction. Branson 2020 Decl. ¶¶ 35–38. Ex. H–J.  Yet at that time Lao PDR chose not to name award debtors as defendants and/or seek discovery from them.

Lao PDR's choice not to name award debtors as defendants when it first learned of their connections to Idaho would weigh against allowing the amendment even if the amendment was not futile.  Other than pointing to the difference in the volume of transactions, Lao PDR offers no explanation as to why the maintenance of a bank account in Idaho to send and receive money related to the arbitrations is enough to assert jurisdiction now, but would not have been enough to assert jurisdiction and seek further discovery when Lao PDR first learned of it.  Lao PDR chose not to name Sanum and LHNV as defendants and instead to use those

MEMORANDUM DECISION AND ORDER - 38

transactions to obtain discovery from Baldwin and Bridge.  Even when it sought discovery from Sanum or LHNV it did so without seeking to add them to the suit. Mot. for Juris. Disc. at 1; see generally TAC (not adding Sanum and LHNV as defendants).  Although Defendants do not argue that Lao PDR unduly delayed its motion to amend to add Sanum and LHNV, the Court finds that even if the motion were not futile, Lao PDR's delay, coupled with its serial amendments in response to Defendants' motions to dismiss, unduly prejudices Defendants and weighs against granting Lao PDR's motion to amend.

Finally, the Court considers whether Lao PDR's motion to amend was made in bad faith.  Nunes, 375 F.3d at 808.  Defendants do not allege that Lao PDR's motion to amend was made in bad faith, and nothing that Lao PDR has done indicates bad faith.  See Defs. Br. at 4–20.  The Court does not find that Lao PDR is acting in bad faith.

## III.    Pending Motion to Dismiss TAC

On September 15, 2021, Defendants' Motion to Dismiss the Third Amended Complaint was fully briefed.  Defs. Mot. to Dismiss Third Am. Compl. for Lack of Personal Jurisdiction or Improper Venue. Aug. 5, 2021, ECF No. 121; Pl.'s Opp'n to Mot. to Dismiss, Aug. 31, 2021, ECF No. 125; Reply in Supp. of Defs. Baldwin and [Bridge-CNMI]'s Mot. to Dismiss Third Am. Compl. for Lack of Personal Jurisdiction or Improper Venue, Sept. 15, 2021, ECF No. 126.  On November 19, 2021, the Court issued its JDO, granting in part and denying in part Lao PDR's motion for jurisdictional discovery and ordering Defendants to produce documents in accordance

**MEMORANDUM DECISION AND ORDER - 39**

with the JDO within 30 days.  JDO at *9.  Further, the Court ordered "that the parties shall confer and submit a proposed schedule for supplemental briefing of Baldwin and Bridge's pending Motion to Dismiss TAC with respect to any new factual allegations and/or legal arguments based on the discovery that will be conducted pursuant to this Order."  Id.  On December 16, 2021, the Court granted the parties an extension of time until January 18, 2022, to conclude discovery.  Order, Dec. 16, 2021, ECF No. 139.

Nonetheless, Lao PDR claims that certain discovery remains outstanding.  See Pl. Br. at 6–7.  Moreover, the Court has yet to receive from the parties a proposed schedule for supplemental briefing of the pending motion to dismiss the TAC.

CONCLUSION

Plaintiff's motion to amend is denied as futile and prejudicial, and it is

**ORDERED** that the motion is DENIED; and it is further

**ORDERED** that the parties shall file a joint status report on any outstanding jurisdictional discovery and a proposed briefing schedule for any supplemental briefing of the pending motion to dismiss the third amended complaint within seven days of the date of this Memorandum Decision and Order.

/s/ Claire R. Kelly<br>Claire R. Kelly, Judge*

Dated: June 7, 2022

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION AND ORDER - 40**